**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| **STEPHEN M. KENNEDY,** | : | **No. 3:16-cv-02010 (WWE)** |
| ***Plaintiff,*** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **ROBERT M. SPEER, in his official** | : | |
| **capacity as Acting Secretary of the Army**[1] | : | |
| ***Defendant.*** | : | **March 27, 2017** |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS OR IN THE ALTERNATIVE MOTION FOR VOLUNTARY REMAND**

[1] Robert M. Speer should be substituted as the named defendant pursuant to Federal Rule of Civil Procedure 25(d) as the acting successor to Eric K. Fanning, Secretary of the Army.

## TABLE OF CONTENTS

TABLE OF CONTENTS ........ 1

PRELIMINARY STATEMENT ........ 2

REGULATORY FRAMEWORK ........ 4

FACTUAL AND PROCEDURAL HISTORY ........ 5

A. Plaintiff is Separated for Serious Misconduct ........ 5

B. Plaintiff Applies to the Army Discharge Review Board ........ 6

C. The Present Complaint ........ 7

STANDARD OF REVIEW ........ 7

ARGUMENT ........ 8

A. The Court Lacks Jurisdiction ........ 8

1. Plaintiff's Claim is Nonjusticiable ........ 9

2. A Claim Based on the Army's Alleged Failure to Follow Regulations Must Be Exhausted ........ 12

3. Plaintiff Has Not Sought Review of a Civilian Review Board Decision ........ 15

B. VOLUNTARY REMAND IS APPROPRIATE ........ 16

1. Remand as a Remedy ........ 17

2. Voluntary Remand ........ 18

CONCLUSION ........ 21

Defendant Robert M. Speer respectfully submits this memorandum of law in support of his motion to dismiss under Rule 12 of the Federal Rules of Civil Procedure, or in the alternative, for voluntary remand of this matter to the Army for further administrative action.

## PRELIMINARY STATEMENT

Plaintiff Stephen Kennedy challenges a decision by the Army Discharge Review Board ("ADRB" or "Board") under the Administrative Procedure Act ("the APA"). Plaintiff claims that the ADRB decision denying him relief was arbitrary and capricious, not based upon substantial evidence, and otherwise contrary to law.

The Defendant requests that the Court dismiss this case. As a threshold matter, the Court lacks jurisdiction to review Plaintiff's claims under the justiciability and exhaustion doctrines. At its core, Plaintiff's challenge is to the characterization of service he received upon being involuntarily separated from the Army. This is a discrete personnel action, which is nonjusticiable. However, to the extent that Plaintiff is challenging the ADRB's failure to follow Army "regulations" he must first exhaust his administrative remedies, which he has not done.

In the alternative, the Defendant requests that the Court remand this matter to the Army for further administrative action. A remand back to the agency is appropriate for two reasons. First, the Army Review Board Agency[2] has been unable to locate four documents that were submitted by Plaintiff and considered by the ADRB. The Army has searched exhaustively for the misplaced documents, but to no avail. Therefore, the Army is unable to provide a certified copy of the administrative record that was the basis for the decision being challenged. Thus, the Court would not

[2] The Army Review Board Agency serves as the highest administrative level for review of personnel actions taken by lower levels of the Army, and administers a number of boards including the Army Discharge Review Board and the Army Board for Correction of Military Records.

be able to effectively review the decision pursuant to the APA. Second, Plaintiff's primary contention is that the ADRB either did not apply the Hagel memo,[3] or if it applied the memo, then the ADRB failed to adequately explain their decision in light of its guidance. The ADRB decision does not mention the Hagel memo or discuss its specific guidance, so it is unclear whether it was applied or not.

Under such circumstances, this Court should remand this case to the Army. *See Fla. Power & Light v. Lorion*, 470 U.S. 729, 744 (1985). Should Plaintiff prevail on the claims he currently asserts, his relief would most certainly be a remand to the Army. Therefore, it would be quicker and a better use of judicial resources for the Court to stay this action and remand the matter with an order requiring the Army to issue a new decision that adequately addresses the Hagel memo, whose application to the Service discharge review boards is now codified. *See* National Defense Authorization Act for Fiscal Year 2017 ("2017 NDAA"), 114 P.L. 328, sec 535 (which amended 10 U.S.C. § 1553 by adding subsection (d)(3)). After the Army issues a new decision, the Court can then lift the stay and issue a schedule for the parties to brief the issue of whether the decision is arbitrary and capricious. If the Army decides in Plaintiff's favor and grants him the relief he requested, then the Court can dismiss the case.[4]

---

[3] In September 2014, Secretary of Defense Chuck Hagel issued supplemental guidance to the military service Boards for Correction of Military/Naval Records when considering requests for discharge upgrades that involved claims of Post-Traumatic Stress Disorder. *See* Compl. Ex. 2 (ECF No. 1-2).

[4] If the Court orders the case remanded back to the Army Discharge Review Board, the jurisdictional issues raised in this motion remain. The Government suggests that remand to the Army Board for Correction of Military Records would resolve all the issues raised in this motion and allow for judicial review pursuant to the APA, should it be necessary.

## REGULATORY FRAMEWORK

Congress has established a statutory framework of administrative boards to adjudicate current or former military members claims. *See* 10 U.S.C. § 1552, *et al*. The majority of the boards created have limited jurisdiction in order to address specific issues and provide redress. *See* 10 U.S.C. §§ 1153, 1554, 1554a. The Army Discharge Review Board is one such board.

The Army Discharge Review Board ("ADRB") was established pursuant to 10 U.S.C § 1553 and 32 C.F.R. § 581.2. The ADRB's limited purpose is "to review the discharge or dismissal [] of any former member" of the Army. 10 U.S.C. § 1553(a). The Board is composed of five Army officers. 32 C.F.R. § 581.2(c)(3). The Board reviews the military records of the applicant, while also allowing for a personal appearance by the applicant or other witnesses. 10 U.S.C. § 1553(c). Title 10 U.S.C. § 1553 was amended by the 2017 NDAA, which directs the ADRB to:

> (i) review medical evidence of the Secretary of the Veterans Affairs or a civilian health care provider that is presented by the former member; and
> (ii) review the case with liberal consideration to the former member that post-traumatic stress disorder or traumatic brain injury potentially contributed to the circumstances resulting in the discharge of a lesser characterization.

10 U.S.C. § 1553(d)(3)(A)(i)-(ii) (2017) (*this amendment occurred after the 2015 ADRB decision being challenged in the instant action*).

By comparison, Congress has granted the military secretaries expansive statutory authority, in their discretion, to "correct any military record" when "necessary to correct an error or remove an injustice." 10 U.S.C. § 1552(a)(1). Pursuant to this authority the Army has established the Army Board for Correction of Military Records ("ABCMR"). The ABCMR's jurisdiction extends to any "document or record" or "any other military matter affecting a member or former member." 10 U.S.C. § 1552(i). "It is the nature of the record and the status of the applicant that

defines the ABCMR's jurisdiction" not the specific relief sought. 32 C.F.R. § 581.3(d)(1)(i). The ABCMR is the highest level of administrative review within the Department of the Army and their jurisdictional mandate is the broadest, which includes reviewing decisions of the lesser statutory boards, such as the ADRB. *See* Compl. Ex. 1 at 2 (Letter from President, Army Discharge Review Board informing Plaintiff that he could seek review of the ADRB decision by applying to the ABCMR). The ABCMR, unlike the other statutory boards, is composed entirely of civilians. 10 U.S.C. § 1552(a). Thus, the plaintiff sought review before the ADRB but did not pursue his remedies before the ABCMR.

## FACTUAL AND PROCEDURAL HISTORY

### A. Plaintiff is Separated for Serious Misconduct

Taking the plaintiff's facts as true for the purposes of the motion to dismiss, the Plaintiff enlisted in the Army on May 18, 2006 as an infantryman. Compl. Ex 1 at 2,[5] (ECF No. 1-1). After completing basic training at Fort Benning, GA, Plaintiff was stationed at Fort Bragg, NC, and assigned to A Company, 2nd Battalion, 504th Parachute Infantry Regiment, 82nd Airborne Division. Compl. at ¶ 8, (ECF No. 1). Plaintiff deployed in support of Operation Iraqi Freedom from June 5, 2007 to July 18, 2008. Compl. at ¶ 9. During the deployment, Plaintiff earned the Combat Infantrymen Badge and received an Army Commendation Medal, Iraq Campaign Medal with Combat Star, and the Overseas Service Ribbon. Compl. at ¶ 14.

In March 2009, Plaintiff's request to take leave to attend his wedding ceremony in May 2009—he was legally married in 2007 (Compl. at ¶ 40)—was denied due to a scheduled unit training exercise. Compl. at ¶ 22. On May 12, 2009, Plaintiff went absent without leave (AWOL) to attend his wedding. Compl. at ¶ 23. After being AWOL for 2 weeks, Plaintiff returned to Fort

---

[5] Pagination citation is to ECF numbering.

Bragg on May 26th. Compl. Ex. 1 at 4. Upon his return, Plaintiff's unit commander referred him for a command directed behavioral health evaluation. Compl. Ex. 1 at 4. He was evaluated for both post-traumatic stress disorder ("PTSD") and traumatic brain injury, but did not meet criteria for either diagnosis at that time. Compl. Ex. 1 at 4. He was, however, diagnosed with a major depressive disorder. Compl. at ¶ 24.

On June 29, 2009, Plaintiff received an Article 15[6] for his offense of going AWOL. Compl. Ex. 1 at 4. His "[p]unishment consisted of reduction to the grade of E-3 [Private First Class], forfeiture of $929.00 pay per month for two months (suspended), and extra duty and restriction for 45 days." Compl. Ex. 1 at 4. His command then initiated an involuntary separation because of the commission of a serious offense—AWOL. Compl. at ¶ 28; Compl. Ex. 1 at 5. On July 27, 2009, Plaintiff was separated from active duty with a "General, under Honorable Conditions" discharge.

### B. Plaintiff Applies to the Army Discharge Review Board

On November 19, 2010, the ADRB, conducting only a record review, denied Plaintiff's first application seeking to have his discharge upgraded. Compl. at ¶ 44; Compl. Ex. 1 at 3. On

---

[6] The Uniform Code of Military Justice ("UCMJ") "provides four methods of disposing of cases involving offenses committed by servicemen: the general, special, and summary courts-martial, and disciplinary punishment administered by the commanding officer pursuant to Art[icle] 15 [of the] UCMJ, 10 U.S.C. § 815." *Middendorf v. Henry*, 425 U.S. 25, 31 (1976). The methods vary in both procedural protections afforded and in the seriousness of the possible punishments that may result. *See id.* Of the four methods, non-judicial proceedings under Article 15 are the least formal; they constitute an "administrative method of dealing with the most minor offenses," and are "conducted personally by the accused's commanding officer." *Id.* at 31-32 (citing *Parker v. Levy*, 417 U.S. 733, 750 (1974)). Article 15 proceedings are intended to provide "an expeditious disciplinary procedure for relatively minor offenses," by which a commander can "speedily impose[]" non-judicial punishment that "does not carry with it the stigma of a criminal conviction." *Middendorf*, 425 U.S. at 64 (Marshall, J., dissenting); *see also United States v. Reveles*, 660 F.3d 1138, 1142 (9th Cir. 2011) (observing that in contrast to court martial procedures, Article 15 proceedings are non-criminal in nature, have "fewer . . . safeguards," and serve the purpose of "creat[ing] an 'essential and prompt means of maintaining good order and discipline' in the military") (quoting MCM Part V ¶ 1c); *accord United States v. Trogden*, 476 F. Supp. 2d 564, 569 (E.D. Va. 2007).

February 18, 2015, Plaintiff submitted another application to the ADRB seeking to upgrade his discharge. Compl. at ¶ 45; Compl. Ex. 1 at 3. He argued that his subsequently diagnosed PTSD was a factor in his going AWOL and other than that single incident, his service was exemplary. Compl. Ex. 1 at 3. He provided documentary evidence in support of his request, which included a personal narrative, letters from his current and former treating therapists, and multiple letters of support from peers. Compl. Ex. 1 at 3; 4.

On October 19, 2015, the ADRB held a personal appearance review, which included testimony by Plaintiff's father. Compl. Ex. 1 at 3; 6. On October 20, 2015, after carefully considering the in-person testimony, all the evidence submitted by Plaintiff, and Plaintiff's military records the ADRB voted 3-2 to deny his request for an upgrade to his discharge. Compl. Ex. 1 at 3.

### C. The Present Complaint

On December 8, 2016, Plaintiff filed the complaint in this case. *See* Compl. Plaintiff initiated this action pursuant to the Administrative Procedures Act, 5 U.S.C. § 701 *et al.*, and the Due Process Clause of the Fifth Amendment. Compl. at ¶ 1. Plaintiff seeks to set aside the October 20, 2015, ADRB decision and wants this Court to direct that his characterization of service be changed to Honorable. Compl. at 13 (Prayer for relief).

## STANDARD OF REVIEW

When a Court lacks the statutory or constitutional authority to adjudicate a claim, the Court should dismiss the claim. *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Id*. Although a court must "accept as true all material factual allegations in the complaint," for purposes of assessing jurisdiction, it also must refrain from "drawing from the pleadings inferences favorable to the party asserting [jurisdiction]." *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998).

In considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must accept as true the well-pleaded factual allegations set forth in the complaint and draw all reasonable inferences in favor of the plaintiff. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). The court, however, need not give "credence to plaintiff's conclusory allegations." *Cantor Fitzgerald v. Lutnick*, 313 F.3d 704, 709 (2d Cir. 2002) (internal quotation marks and citation omitted). The court should begin by "identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). If well-pleaded factual allegations exist, the court must then determine whether they plausibly give rise to an entitlement for relief. *Id.*

## ARGUMENT

Plaintiff's Complaint should be dismissed because he is challenging a nonjusticiable discrete military personnel decision—his characterization of service. Likewise, to the extent that he is challenging the Army's failure to follow the Hagel Memo, he must first exhaust intramilitary administrative remedies. Thus, his complaint should be dismissed in its entirety.

In the alternative, the Court should order a stay and remand this matter to the Army for further administrative action. This will enable the Army to fully explain its rationale, while also ensuring that a complete record is made available to the Court, should judicial review be necessary.

### A. The Court Lacks Jurisdiction

The Court lacks jurisdiction to adjudicate Plaintiff's APA claim challenging the ADRB's decision. *Dibble v. Fenimore*, 339 F.3d 120, 127-28 (2d Cir. 2003); *Guitard v. Sec'y of Navy*, 967 F.2d 737, 740 (2d Cir. 1992); *Kreis v. Sec'y of the Air Force*, 866 F.2d 1508, 1510-15 (D.C. Cir. 1989). Challenges to military personnel decisions are generally nonjusticiable under the intramilitary immunity doctrine. Courts have recognized, however, a narrow exception to the gen-

eral presumption in favor of nonjusticiability; servicemembers may seek judicial review in federal court based on a facial constitutional challenge to military regulations or the service's failure to comply with its own mandatory guidelines. The Second Circuit has held, however, that administrative exhaustion is required before bringing a claim based on failure to follow regulations. Finally, the Supreme Court and Second Circuit have recognized that notwithstanding the general presumption of nonjusticiability, a servicemember may seek judicial review under the APA of an adverse decision by the service's civilian review board.

Here, the Court lacks jurisdiction over Plaintiff's challenges to the characterization of service he received when separated from the Army. To the extent that Plaintiff's claim requires the Court to make an individualized inquiry into a discrete personnel action, any such claim is nonjusticiable. Furthermore, even if Plaintiff's claim was limited to a challenge on the Army's alleged failure to follow its own regulations, Plaintiff must first exhaust his administrative remedies, which he has not done. Finally, although courts may review a decision by a civilian review board under the APA, Plaintiff has not asserted such a claim here. *Compare* 32 C.F.R. § 581.2(c)(3) (stating ADRB is composed of Army officers) *with* 10 U.S.C. § 1552(a)(1) (stating Service Boards for Correction of Military Records will be composed of civilians).

### 1. Plaintiff's Claim is Nonjusticiable

The justiciability of military personnel decisions "is limited by the fundamental and highly salutary principle that: '[J]udges are not given the task of running the Army.'" *Kreis*, 866 F.2d at 1511 (quoting *Orloff v. Willoughby*, 345 U.S. 83, 93-94 (1953)). Accordingly, "courts will not normally review purely discretionary decisions by military officials which are within their valid jurisdiction." *Jones v. New York State Div. of Military & Naval Affairs*, 166 F.3d 45, 52 (2d Cir. 1999) (quoting *Kurlan v. Callaway*, 510 F.2d 274, 280 (2d Cir. 1974)). The rule of nonjusticiability "is based on the common-sense notion that allowing service members to sue

their superiors would unacceptably compromise military discipline and readiness for combat." *Id.*; *see also Kreis*, 866 F.2d at 1511 ("Appellant's request for retroactive promotion falls squarely within the realm of nonjusticiable military personnel decisions. To grant such relief would require us to second-guess the Secretary's decision about how best to allocate military personnel in order to serve the security needs of the Nation.").

More specifically, the Second Circuit has held that claims for equitable relief based on military personnel decisions are generally nonjusticiable. *Dibble*, 339 F.3d at 127-28. In *Dibble*, a member of the Air National Guard who was honorably discharged brought suit, alleging that he was "unlawfully denied re-enlistment in retaliation for his constitutionally and statutorily protected activities as union steward." *Id.* at 122. The Second Circuit held that Dibble's complaint must be dismissed as nonjusticiable under the intramilitary immunity doctrine. *Id.* at 128. The Second Circuit "declin[ed] to adopt a categorical rule on the justiciability of intramilitary suits," but held that equitable challenges to discrete military personnel decisions are non-justiciable to the extent that they require "a particularized inquiry into the mindset of [the servicemember's] superior officers." *Id.* The Second Circuit found that "[f]or the district court to find that the Guard violated Dibble's constitutional rights by discharging him, it would be forced to make a particularized inquiry into the mindset of his superior officers, determining whether their various disciplinary actions were motivated by proper military concerns or by the unconstitutional desire to stifle Dibble's protected First Amendment activity." *Id.* at 128.[7] "Especially considering the

---

[7] *See also Jones v. 106th Rescue Wing*, 859 F. Supp. 2d 381, 386 (E.D.N.Y. 2012) (dismissing claims based on allegations that military servicemember's supervisor "was motivated by ill will and legally improper motives when transferring plaintiff and denying his requests for promotions" because "[t]he military personnel decisions raise[d] by Plaintiff involve[s] precisely the type of individualized questions that are prohibited from judicial review"). NB – any reference to *Jones v. 106th Rescue Wing* will include the full case name as to differentiate it from *Jones v. New York State Division of Military and Naval Affairs*, which will be referred to as *Jones*.

availability of intramilitary review," the Second Circuit declined "to insert the federal courts into military decisionmaking in such an intrusive manner." *Id*. On the other hand, *Dibble* held that courts may "entertain" suits that are "facial challenges to the constitutionality of statutes or military regulations" or "where the military has failed to follow its own mandatory regulations in a manner substantially prejudicing a service member." *Id.* at 122, 127-28; *see also Jones*, 166 F.3d at 52 (recognizing exception to general rule of nonjusticiability "where the military has failed to follow its own mandatory regulations in a manner substantially prejudicing a service member").

Here, Plaintiff seeks to have his characterization of service changed, which would require the Court to make a "particularized inquiry into the mindset" of Plaintiff's superior officers—precisely the sort of inquiry that the Second Circuit has held is barred by the intramilitary immunity doctrine. *Dibble*, 339 F.3d at 128. Moreover, even though Plaintiff has availed himself of the ADRB it remains improper for the Court to insert itself "into military decisionmaking" before Plaintiff exhausts his administrative remedies by seeking review at the ABCMR. *Dibble*, 339 F.3d at 128.

Finally, to the extent the Plaintiff challenges the *merits* of the Army's decision as to military affairs, such a challenge is nonjusticiable. *Allphin v. United States*, 758 F.3d 1336, 1341 (Fed. Cir. 2014) ("Appellants' merit-based challenges are nonjusticiable") & *Murphy v. United States*, 993 F.2d 871, 874 (Fed. Cir. 1993) ("Because the merits of the Air Force's decision to release Murphy from active duty are beyond judicial reach, so too is consideration of his military records."). Only a challenge to the *procedures* followed in rendering a military decision may present a justiciable controversy. *Sargisson v. United States*, 913 F.2d 918, 921 (Fed. Cir. 1990) ("once the Secretary promulgated regulations and instructions and made them the basis for [the

plaintiff's] release, his action became subject to judicial review for compliance with those regulations and instructions, even though he was not required to issue them at all") & *Murphy*, 993 F.2d at 873. "Thus, a court's role in reviewing the decision of a military corrections board is to determine whether the decision making process was deficient, not whether [the] decision was correct." *Pettiford v. Sec'y of Navy*, 774 F. Supp. 2d 173, 182 (D.D.C. 2011) (internal quotation marks omitted).

### 2. A Claim Based on the Army's Alleged Failure to Follow Regulations Must Be Exhausted

Even if Plaintiff's claim were limited to a challenge based on the Army's alleged failure to follow its own mandatory guidelines, the Court likewise lacks jurisdiction over such a claim because Plaintiff has failed to exhaust his administrative remedies. Although the Second Circuit has recognized that federal courts have jurisdiction over claims based on the military's "failure to follow its own [mandatory] regulations," exhaustion of administrative remedies is required before bringing any such claim. *Jones*, 166 F.3d at 52, 54-55. In *Jones*, the Second Circuit held that administrative exhaustion is required for a claim based on the "regulations" exceptions to the nonjusticiability rule. *Jones*, 166 F.3d at 54-55; *see also Guitard*, 967 F.2d at 740 (noting "the particular importance of administrative exhaustion in circumstances implicating military discipline"). In *Jones*, a major in the Army National Guard sought to challenge his removal from service based on the Guard's alleged failure to comply with its regulations. *Id.* at 52. The Second Circuit held that exhaustion of all administrative remedies was a prerequisite to his claim for injunctive relief under Section 1983. *Id.*, at 54. The Second Circuit acknowledged that in *Patsy v. Board of Regents,* 457 U.S. 496, 516 (1982), the Supreme Court held that "policy considerations alone cannot justify [a] judicially imposed exhaustion" requirement for 1983 claims where the statute imposes no such requirement, but held that exhaustion was required notwithstanding

*Patsy*. *Id.*, at 54. The Second Circuit stated that in requiring exhaustion it was not "crafting an exception to the general rule that § 1983 does not have an exhaustion requirement," but "simply clarify[ing] the contours of the 'regulations' exception to the well established rule" of nonjusticiability. *Id.*; *see also Yarusso v. 106 Rescue Wing, New York Air Nat. Guard*, 511 F. App'x 13, 15 (2d Cir. 2013) (holding exhaustion required before servicemember can challenge military decision based on alleged failure to regulations).

The exhaustion requirement set forth in *Jones* is not changed by the Supreme Court's decision in *Darby v. Cisneros*, 509 U.S. 137 (1993), which (consistent with *Patsy*) held that under the APA courts may not impose an additional exhaustion requirement as a prudential doctrine of judicial administration. As the Second Circuit held in *Jones*, because the exhaustion requirement arises from the contours of the justiciability doctrine, exhaustion is required for any claim based on the military's failure to follow regulations even where the statute under which relief is sought does not require it. *See Jones*, 166 F.3d at 54. Likewise, in *Chappell v. Wallace*, the Supreme Court recognized that exhaustion requirement in the military context arises from "the special relationship" between the military and its personnel. 462 U.S. 296, 301-04 (1983). *Chappell* noted that the civilian review boards are one component of the "comprehensive internal system of justice to regulate military life." 462 U.S. at 302-03; *see also Saad v. Dalton*, 846 F. Supp. 889, 891 (S.D. Cal. 1994) (exhaustion to civilian board required); *but see Brezler v. Mills*, No. 14-CV-7424 (JFB), 2016 WL 7100497, at *16 (E.D.N.Y. Dec. 6, 2016) (exhaustion not required for APA review of Board of Inquiry disciplinary proceedings), appealed, Doc. #84 (Feb. 3, 2017). The existence of "two systems of justice . . . : one for civilians and one for military personnel"—a "special and exclusive system of military justice"—is "required" by the military's special status, "contemplated" by the Constitution, "created" by Congress, and "long recognized" by the

courts, and therefore precludes judicial interference into intramilitary disputes. *Id.* at 300, 303-04. The *Chappell* Court observed, however, that once a servicemember exhausts his administrative remedies, civilian review board "decisions are subject to judicial review and can be set aside if they are arbitrary, capricious or not based on substantial evidence." *Id.* at 303; *see also Saad,* 846 F. Supp. at 891.

Finally, the recognized exceptions to the exhaustion requirement have been construed narrowly, and none applies here. The Second Circuit has held that exhaustion "may not be required when: (1) available remedies provide no genuine opportunity for adequate relief; (2) irreparable injury may occur without immediate judicial relief; (3) administrative appeal would be futile; and (4) in certain instances a plaintiff has raised a substantial constitutional question." *Guitard*, 967 F.2d at 741 (internal quotation marks omitted). Applying these factors, the Second Circuit in *Able v. United States* held that exhaustion of a facial constitutional challenge to the "Don't Ask, Don't Tell" policy fell within the irreparable injury and futility exceptions to the exhaustion requirement. 88 F.3d 1280, 1288 (2d Cir. 1996). With respect to the futility requirement, the Second Circuit held that exhaustion would be futile because the agency had no power to declare the statute unconstitutional, noting that the Court's analysis required no fact-finding. *Id.* As a general matter, however, even when petitioner's claim "would likely have failed" in the agency review process, exhaustion is still required because it serves other purposes, including facilitating judicial review by "protecting the authority of administrative agencies, limiting interference in agency affairs, developing the factual record to make judicial review more efficient, and resolving issues to render judicial review unnecessary." *Beharry v. Ashcroft*, 329 F.3d 51, 62 (2d Cir. 2003). For these reasons, exhaustion is excused for futility only when an adverse decision is a certainty or when available procedures are incompetent to provide adequate redress. *See*

*Nat'l Sci. & Tech. Network, Inc. v. F.C.C.*, 397 F.3d 1013, 1014 (D.C. Cir. 2005); *Gonzalez v. Perrill*, 919 F.2d 1, 2, (2d Cir. 1990).

Here, to the extent that Plaintiff seeks to challenge his discharge on the basis that the Army allegedly failed to comply with its own guidelines, Plaintiff must first exhaust his administrative remedies by seeking relief before the ABCMR. *Jones*, 166 F.3d at 54-55; 10 U.S.C. § 1552. Plaintiff does not bring a facial challenge to the constitutionality or legality of any regulation. *Cf. Able*, 88 F.3d at 1288-89. Plaintiff also has access to process that offers genuine opportunities for adequate relief, and, as set forth below, an adverse decision by the ABCMR is subject to judicial review. *Guitard*, 967 F.2d at 741. The plaintiff cannot argue futility because he is asking the Army to apply an existing policy (and, in any event, the ADRB's decision was 3-2). Finally, judicial interference prior to complete administrative review is particularly inappropriate because the Army's administrative process is both necessary and competent to determine disputed factual and legal issues. *See Beharry*, 329 F.3d at 62.

### 3. Plaintiff Has Not Sought Review of a Civilian Review Board Decision

Although judicial review of civilian review board decisions under the APA is available, Plaintiff does not seek such relief here, and the fact that he has styled his claim as a challenge to the ADRB's decision under the APA is not sufficient to confer jurisdiction. Supreme Court and Second Circuit precedent recognizes the availability of judicial review of civilian review board decisions under the APA, but does not suggest a decision that arises outside that procedural context can be reviewed under the APA without consideration of the justiciability doctrine. *See also Darby*, 509 U.S. at 146 (Federal courts nonetheless remain free "to apply, where appropriate, other prudential doctrines of judicial administration to limit the scope and timing of judicial review[.]") Consistent with *Chappell*, the Second Circuit has held that notwithstanding the justiciability doctrine federal courts may review fully exhausted decisions of civilian review boards to

correct records "under the deferential standard of whether the decisions were arbitrary, capricious, or unsupported by substantial evidence." *Dibble v. Fenimore*, 545 F.3d 215, 216 (2d Cir. 2008) ("*Dibble II*") (citing *Chappell*, 462 U.S. at 303). The Second Circuit explicitly noted that this decision was based on "ample precedent," which "takes note of the facts that the Board is made up of civilians and that it is authorized, with minor exceptions, only to correct military records" and thus "has limited power and interferes only minimally with the cohesiveness and efficiency of existing military hierarchies and operations." *Id.* at 215-16; *see also Kreis*, 866 F.2d at 1512 (dismissing request for retroactive promotion as nonjusticiable but permitting APA review of claim for correction of military records).

Plaintiff is not seeking review of the decision of a civilian review board to correct military records. *Dibble II* held only that intramilitary immunity allowed claims seeking review of civilian review board decisions, but did not purport to empower federal courts to review any *military personnel decision* under the APA before such a claim prior to exhaustion. Allowing such a claim to proceed would be an end-run around the doctrine of justiciability, would constitute a significant interference with military decision-making, and is contrary to Supreme Court and Second Circuit precedent. *See McCarthy v. Madigan*, 503 U.S. 140, 145 (1992) *superseded by statute* 42 U.S.C. 1997e(a) ("[E]xhaustion principles apply with special force when 'frequent and deliberate flouting of administrative processes' could weaken an agency's effectiveness by encouraging disregard of its procedures.") (quoting *McKart v. United States*, 395 U.S. 185, 195 (1969)).

### B. VOLUNTARY REMAND IS APPROPRIATE

In the alternative, the Defendant requests that the Court remand this matter to the Army for further administrative action. A federal agency's motion for a voluntary remand is commonly

granted because it allows an agency to correct its own potential errors without expending the resources of the court in reviewing a record that may be incorrect or incomplete. *See*, *e.g.*, *Ethyl Corp v. Browner*, 989 F.2d 522, 524 (D.C. Cir. 1993) (agency asked for voluntary remand following change in evidence but plaintiff opposed, remand granted); *SKF USA Inc. v. United States*, 254 F.3d 1022, 1029 (Fed. Cir. 2001) (change in policy a proper justification for voluntary remand); *Citizens Against Pellissippi Parkway Extension, Inc. v. Mineta*, 375 F.3d 412, 416-17 (6th Cir. 2004) ("[I]t is an abuse of discretion to prevent an agency from acting to cure the very legal defects asserted by plaintiffs challenging federal action."); *Sierra Club v. Van Antwerp*, 560 F. Supp. 2d 21, 24-25 (D.D.C. 2008) ("Remand in this case will serve the interest of allowing the Corps to cure its own potential mistake rather than needlessly wasting the Court's and the parties' resources."). Courts retain the discretion to remand an agency decision when an agency has raised "substantial and legitimate" concerns in support of remand. *Carpenters Indus. Council v. Salazar*, 734 F. Supp. 2d 126, 132 (D.D.C. 2010) (citing *Sierra Club*, 560 F. Supp. 2d at 23 (collecting cases)).

**1. Remand as a Remedy**

"If the record before the agency does not support the agency action, if the agency has not considered all relevant factors, or if the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Utahans for Better Transp. v. U.S. Dep't of Transp.*, 305 F.3d 1152, 1164 (10th Cir. 2002) (internal citations and quotation marks omitted); *see also Palisades Gen. Hosp. Inc., v. Leavitt*, 426 F.3d 400, 403 (D.C. Cir. 2005). Under the APA, because the District Court sits as an "appellate tribunal," if the Court rejects the agency's position, it vacates and remands the matter; the Court does not have the jurisdiction to order specific relief. *Palisades Gen. Hosp. Inc.*, 426 F.3d at 403.

Remand is indicated under the APA because a "reviewing court is not generally empowered to conduct a *de novo* inquiry into the matter being reviewed" but should, when necessary, "remand to the agency for additional investigation or explanation." *See Fla. Power & Light Co. v. Lorion,* 470 U.S. 729, 744 (1985); *Palisades Gen. Hosp. Inc.*, 426 F.3d at 403 (explaining that a district court's role in reviewing a final agency action is "[u]nlike . . . managing a garden variety civil suit," as the court "does not perform its normal role, but instead sits as an appellate tribunal"). "If a reviewing court agrees that the agency misinterpreted the law . . . it will set aside the agency's action and remand the case – even though the agency . . . might later, in the exercise of its lawful discretion, reach the same result for a different reason." *FEC v. Akins*, 524 U.S. 11, 25 (1998). In such circumstances, the district court "ha[s] no jurisdiction to order specific relief." *Palisades Gen. Hosp. Inc.*, 426 F.3d at 403 (holding that the district court did not have jurisdiction to order the plaintiff hospital's reclassification after finding that the agency erred in rejecting data submitted in support of the reclassification); *see also Nat'l Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 657 (2007) ("As an initial matter, we note that if the [agency's] action was arbitrary and capricious, as the Ninth Circuit held, the proper course would have been to remand to the agency for clarification of its reasons.") (citing *Gonzales v. Thomas*, 547 U.S. 183 (2006)); *I.N.S. v. Orlando Ventura,* 537 U.S. 13, 16 (2002) ("Generally speaking, a court of appeals should remand a case to an agency for decision of a matter that statutes place primarily in agency hands").

**2. Voluntary Remand**

Defendant requests that the Court grant its motion to voluntarily remand the case to the agency for further action and stay proceedings, until the Army renders a decision, for two reasons.

First, following notification of this lawsuit, agency counsel requested the relevant records from the Army Review Board Agency ("ARBA"). After reviewing the records, it was identified

that four documents[8] submitted by the Plaintiff in his 2015 application were not present. Dispute an exhaustive search the misplaced documents have not been located. The absence of these documents prevents the Defendant from providing a complete administrative record to the Court.

Second, Plaintiff's primary challenge of the ADRB decision is its failure to either apply the "Hagel Memo" or adequately explain why or how the ADRB applied the Hagel Memo. *See* Compl. at ¶¶ 56-57; 62-64; 69; 72. Although the Hagel Memo is only directed to the military service Boards for Correction of Military/Naval Records, as a matter of policy the Army has also been applying this guidance to the ADRB. As noted earlier, the Hagel Memo's applicability to the ADRB was codified in the 2017 NDAA, after the plaintiff's application to the ADRB. *See* 114 P.L. 328, sec 535.

The plaintiff essentially challenges the Army's failure to apply the Hagel Memo. The ADRB decision being challenged fails to discuss the Hagel memo, so it is not possible to determine whether it was, or was not, applied and if it was, why its guidance was insufficient to warrant a change in Plaintiff's discharge. The lack of explanation does not by itself result in the decision being arbitrary or capricious, but it does hamper the Court's ability to properly review the decision. Moreover, because the Hagel Memo now applies officially to the ADRB, there has been a change in policy and a remand would give the plaintiff the very thing he seeks: a review of his discharge using the guidance of the Hagel Memo. As such, the Court should afford the agency an opportunity to apply the policy and fully explain its decision in light of the policy, which would enable effective judicial review. This is all the more appropriate because the plaintiff failed to seek review at the

[8] The specific documents that were submitted by Plaintiff in his 2015 application to the ADRB that cannot be located are: (1) Recommendation for the Army Commendation; (2) Character Letter, Peer Letter; (3) Character Letter, Post Separation; and (4) Diploma. Given the nature of the challenge in this case, items (1) through (3) might be significant.

ABCMR, which would have applied the Hagel Memo per the explicit guidance of the Secretary of Defense; therefore, allowing the Army to reconsider the plaintiff's application in light of the codification of the Hagel Memo in 2017 is both just and efficient.

As part of the voluntary remand, Plaintiff has the opportunity to submit a new application, in which he could raise any new arguments and provide additional evidence, all with the benefit of counsel this time. If the Court orders a voluntary remand, the Army can reconsider Plaintiff's request and adequately explain its decision, while also providing the Court a complete administrative record, should judicial review still be necessary.

Defendant anticipates that, after the plaintiff submits his case, it will take the Army approximately 180 days to issue a decision. Defendant suggests that within 30 days after final action by the Army, the parties will file with the Court a copy of the new decision. At this point, the Court can decide if further litigation is necessary.

**CONCLUSION**

For the foregoing reasons, Defendant respectfully requests that the Court grant the Government's Motion to Dismiss or in the alternative grant the Motion for Voluntary Remand to the Army.

DEIRDRE M. DALY,
UNITED STATES ATTORNEY

By: /S/ David C. Nelson
David C. Nelson (ct25640)
Assistant U.S. Attorney
157 Church Street, 24th Floor
New Haven, Connecticut 06510
Tel: (203) 821-3700
Fax: (203) 773-5373
Email: David.C.Nelson@usdoj.gov

Of Counsel: /S/ Major Patrick McGrath
Maj. Patrick McGrath
Litigation Attorney
Military Personnel Law Branch
United States Army Legal Services Agency
Fort Belvoir, VA 22060

## CERTIFICATION

I hereby certify that on March 27, 2017, a copy of the foregoing was filed electronically. Notice of this filing was sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/S/ David C. Nelson
David C. Nelson (ct25640)
Assistant United States Attorney