# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

STEPHEN M. KENNEDY, and ALICIA J. CARSON,

    16cv2010 (WWE)

    individually and on behalf of all similarly situated persons,

    Plaintiffs,

v.

**MARK ESPER, Secretary of the Army,**

    Defendant.

## MEMORANDUM OF DECISION ON MOTION FOR CLASS CERTIFICATION

Plaintiffs Stephen Kennedy and Alicia Carson, veterans of the conflicts in Iraq and Afghanistan respectively, filed this action pursuant to the Administrative Procedure Act ("APA") and the Fifth Amendment due process clause, individually and on behalf of all similarly situated persons. Specifically, plaintiffs seek a class-wide injunction ordering the Army Discharge Review Board ("ADRB") reviewing less-than-Honorable discharges to follow the directive of the memorandum issued by the Secretary of Defense Hagel ("Hagel Memo") to give "liberal consideration" to diagnoses of post-traumatic stress disorder (PTSD) and similar mental health conditions, and records indicating symptoms of those conditions. Plaintiffs have moved for certification of a class pursuant to Federal Rule of Civil Procedure 23(b)(2) seeking equitable relief. Specifically, plaintiffs' proposed class consists of all Army, Army Reserve, and Army National Guard veterans of the Iraq and Afghanistan era—the period between October

1

7, 2001 to present—who: (a) were discharged with a less-than Honorable service characterization (this includes General and Other than Honorable discharges from the Army, Army Reserve, and Army National Guard, but not Bad Conduct or Dishonorable discharges); (b) have not received discharge upgrades to Honorable; and (c) have diagnoses of PTSD or PTSD-related conditions or records documenting one or more symptoms of PTSD or PTSD-related conditions at the time of discharge attributable to their military service under the Hagel Memo standards of liberal and special consideration.

Defendant opposes the motion for certification on numerous grounds. For the following reasons, the motion for certification will be granted.

## **BACKGROUND**

The following background to plaintiffs' claims is reflected in the allegations of the amended complaint and the parties' briefs and the exhibits thereto.

Kennedy

Kennedy joined the Army in 2006 and served in Iraq in 2007 and 2008. After his combat deployment, Kennedy returned to the United States with severe PTSD and major depression that the Army failed to diagnose or treat adequately.

In March 2009, Kennedy's request to take leave to attend his wedding ceremony in May 2009 was denied due to a scheduled unit training exercise. In May 12, 2009, Kennedy took an absence without leave ("AWOL") to attend his wedding. After two weeks of AWOL, Kennedy returned to Fort Bragg, at which time he was referred for a command directed behavioral health evaluation. He

was evaluated for PTSD and traumatic brain injury, but he did not meet criteria those diagnoses. He was diagnosed with major depressive disorder.

On July 27, 2009, Kennedy was separated from active duty with a General, Under Honorable Conditions discharge. Kennedy represents that after he began mental treatment, he realized that his misconduct resulted from his undiagnosed and untreated PTSD.

In 2010, Kennedy applied to the ADRB for a change to his discharge status. On November 19, 2010, the ADRB conducted a record only review and denied his application.

In February 2015, Kennedy submitted another application to the ADRB for a change to his discharge status. He submitted documentary evidence to support his assertion that his PTSD was a factor in his AWOL. The ADRB denied his application. Kennedy asserts that the ADRB failed to follow, or even reference, the instructions issued in the Hagel Memo.

On December 8, 2016, Kennedy filed the original complaint in this case. In the complaint, Kennedy seeks to set aside the October 2015 ADRB decision and have the Court direct that his characterization of service be changed to Honorable.

Carson

On April 17, 2017, Kennedy filed an amended complaint that joined Carson to the action. Carson was deployed to Afghanistan from February until November 2010. During her deployment, Carson earned a promotion in rank,

an Army Commendation, and a Combat Action Badge.

Upon her return to Connecticut, Carson informed her commander that she was experiencing symptoms of PTSD, and as result, she was referred to a medical provider for treatment. She received mental health services through the Department of Veterans Affairs and the Hartford Vet Center. She received continual treatment for her symptoms related to PTSD and a traumatic brain injury for approximately 18 months. Thereafter, Carson had several unexcused absences and was separated from service for unsatisfactory performance. She was discharged on May 29, 2012. The Connecticut National Guard characterized her service as General, Under Honorable Conditions.

In April 2015, she applied to the ADRB seeking a discharge upgrade to Honorable and a change to the reason for separation to "Other designated physical or mental conditions." In October 2015, the ADRB denied her upgrade application, noting that the pertinent documents were "NFI" or "Not in File." The ADRB reasoned that denial was appropriate because the "facts and circumstances leading to discharge are unknown."

In the complaint, Carson requests to have her discharge upgraded to Honorable and seeks to have the Army prevented from recouping any part of her unearned enlistment bonus.

Remand and Relief

After plaintiffs had filed a motion for class certification, defendant moved to dismiss or, in the alternative, voluntarily remand. On September 19, 2017, the

Court remanded both of the plaintiffs' cases to the ADRB to "revisit the original applications that are the subject of this litigation."

In October 2017, the Connecticut Army National Guard granted Carson an upgrade to Honorable; accordingly, the ADRB did not render a decision with regard to Carson. In March 2018, the ADRB upgraded Kennedy's discharge characterization to Honorable.

## **DISCUSSION**

Standing: Redressabiity

Defendant challenges the Court's jurisdiction to issue the requested relief: An injunction ordering the ADRB to take into consideration, follow, and apply the Hagel Memo and medically appropriate standards for PTSD into the applications for a change in discharge status.

The doctrine of Article III standing requires a litigant to demonstrate that (1) the litigant must have suffered actual or threatened injury as a result of the illegal conduct of the defendant, (2) the injury is fairly traceable to the challenged action, and (3) the injury is redressable by a favorable decision. Valley Forge Christian College v. Americans United for Separation of Church and State, 454 U.S. 464, 472 (1982). Plaintiffs' harm must be actual or imminent, not conjectural or hypothetical. Port Washington Teachers' Assoc. v. Bd. of Educ. of the Port Washington Union Free Sch. Dist., 478 F.3d 494, 498 (2d Cir. 2007).

Defendant maintains that this Court cannot enter an injunction under the APA because the proper remedy is to remand to the agency for reconsideration.

5

Defendant asserts that the Court cannot "direct the agency to evaluate a particular claim in a particular manner or to provide a particular benefit much less give such direction as to service members who have not even sought judicial review or even sought a discharge upgrade from the ADRB." Defendant expresses further concern that an injunction imposing procedural rules not previously approved by Congress or authorized by the Secretary of the Army would deviate from the judicial deference accorded to military correction decisions.

The APA provides for "any applicable form of legal action, including … mandatory injunction." See 5 U.S.C § 703. Supreme Court precedent provides that circumstances "may make it appropriate for judicial review to culminate in the entry of declaratory or injunctive relief that requires the Secretary to modify future practices." Bowen v. Massachusetts, 487 U.S. 879, 905 (1988). In accordance with Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, Inc., 435 U.S. 519, 523-25 (1978), which defendant cites as supportive authority, courts are not generally free to impose additional procedural rights that the agencies have not chosen to adopt.

Here, defendant appears to overstate the extent of the relief sought. Plaintiffs are not seeking "tailor-made procedures devised by the court," which the Second Circuit has indicated as inappropriate relief. See Guitard v. United States Sec'y of Navy, 967 F.2d 737, 742 (2d Cir. 1992). Plaintiffs have requested that the Court's injunction "rectify the ADRB's failure to apply the

decisional standards already established by the Hagel Memo and now codified at 10 U.S.C. § 1553." This Court has jurisdiction to consider a lawsuit seeking redress where a military entity has failed to follow mandatory regulations resulting in prejudice to a service member. Dibble v. Fenimore, 339 F.3d 120, 128 (2d Cir. 2003). The Court will determine the scope of the any injunctive relief, if appropriate, at a later stage of this action.

Mootness

Defendant argues that the Court should deny the motion for class certification and dismiss the action as moot because the named plaintiffs have already received the relief sought after the case was remanded.

"[A] case is moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." City of Los Angeles v. Davis, 440 U.S. 625, 631 (1979). The mootness doctrine ensures that the litigant's interest exists "throughout the life of the lawsuit." Comer v. Cisneros, 37 F.3d 775, 798 (2d Cir. 1994). However, there are special considerations relevant to mootness in the class action context. Samele v. Zucker, 324 F. Supp. 3d 313, 327 (E.D.N.Y. 2018). Generally, a class action case will become moot if the named plaintiffs' claims become moot prior to the court's certification of the class. Comer, 37 F.3d at 798. However, after the Court has certified a class, the termination of a class representative's claim does not moot the claims of the unnamed members of the class. Cty. of Riverside v. McLaughlin, 500 U.S. 44, 51-52 (1991). Further, in accordance with established precedent, a class

action will not be rendered moot after a named plaintiff has received relief prior to class certification where: (1) defendant voluntarily ceases the allegedly illegal conduct in an attempt to evade judicial scrutiny; (2) the claims are inherently transitory so that the court will not have enough time to rule on a motion for class certification before the representative's interest expires; or (3) the claims are capable of repetition, yet evading judicial review. Comer, 37 F.3d at 798-9. As Comer indicated, after voluntary cessation of a named plaintiff's claim, a class action claim should not be considered moot if the defendant has not sustained a heavy burden of demonstrating "with assurance that there is no reasonable expectation" that the illegal conduct will recur, and that interim relief or events have "irrevocably eradicated the effects of the alleged violation." Id. at 800. "Requiring multiple plaintiffs to bring separate actions, which effectively could be 'picked off' by a defendant's tender of judgment before an affirmative ruling on class action could be obtained, obviously would frustrate the objectives of class actions … [and] would invite waste of judicial resources by stimulating successive suits brought by others claiming aggrievement." Deposit Guar. Nat'l Bank, Jacson, Miss. v. Roper, 445 U.S. 326, 339 (1980).

     Plaintiffs assert that the voluntary cessation exception applies to this case. Here, the named plaintiffs were able to obtain favorable results after remand. However, defendant has not demonstrated assurance that there exists no reasonable expectation that the ADRB will continue to disregard the Hagel Memo PTSD directive in its in review of discharge upgrade applications. Further, as

plaintiffs point out, this Court has considered a similar putative class action, <u>Monk v. Mabus</u>, 14 cv 260 (WWE), which was brought against the Secretaries of the Navy, Army and Air Force, challenging military correction boards' decisions relative to discharge upgrade applications by veterans asserting to have PTSD. On November 14, 2014, this Court granted a voluntary remand to the respective military Secretaries for consideration of the named plaintiffs' upgrade applications after then Secretary of Defense Hagel had issued his memo concerning consideration of PTSD in upgrade applications. In their motion for voluntary remand, the <u>Monk</u> defendants represented that "the boards will fully and carefully consider all evidence each individual applicant would like to submit, and evaluate this evidence in accordance with the Secretary's policy memorandum." The fact that the instant action alleging similar failures to evaluate evidence in accordance with the Hagel Memo was filed on December 8, 2016, indicates events or prior relief have not "irrevocably eradicated" the alleged systemic improper review of upgrade applications. Accordingly, the Court finds that this case involves an interest—application of the Hagel Memo instructions to less-than-Honorable discharge upgrade applications--that will exist "throughout the life of the lawsuit."

<u>Exhaustion of Administrative Remedies</u>

Defendant asserts that plaintiffs have failed to demonstrate that the proposed class members have exhausted their administrative remedies. The named plaintiffs represent that a final agency decision from the ADRB is appropriate for judicial review.

> Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review….Except as otherwise expressly required by statute, agency action otherwise final is final for the purposes of this section whether or not there has been presented or determined an application for a declaratory order, for any form of reconsideration, or, unless the agency otherwise requires by rule and provides that the action meanwhile is inoperative, for an appeal to superior agency authority.

5 U.S.C. § 704. In <u>Darby v. Cisnersos</u>, 509 U.S. 137, 154 (1993), the Supreme Court held that, pursuant to the APA, "an appeal to 'superior agency authority' is a prerequisite to judicial review *only* when expressly required by statute or when an agency rule requires appeal before review and the administrative action is made inoperative pending that review." Thus, "a plaintiff need not seek further review of a final action within the agency before filing suit, unless a specific statute or rule expressly requires otherwise." <u>Brezler v. Mills</u>, 220 F. Supp. 3d 303, 322 (E.D.N.Y. 2016).

Defendant's opposition brief sets forth no statutory language expressly requiring exhaustion of an administrative remedy or an appeal to a "superior agency authority" as a prerequisite to judicial review. Accordingly, for purposes of ruling on this motion for certification, the Court finds that judicial review after a final agency decision from the ADRB is appropriate.

The Court turns next to consider whether plaintiffs have shown that class certification is warranted.

**Federal Rule of Civil Procedure 23(a)**

To receive class certification, plaintiffs must first satisfy the four elements of Federal Rule of Civil Procedure 23(a): numerosity, commonality, typicality and

the adequacy of representation.  Plaintiffs must then meet at least one of the three subsections of Rule 23(b).  McLaughlin v. American Tobacco Co., 522 F.3d 215, 222 (2d Cir. 2008).

Rule 23 is to be construed liberally according to a standard of flexibility. Marisol A. v. Giuliani, 126 F.3d 372, 377 (2d Cir. 1997).  Consideration of class certification is not an occasion to examine the merits of the claims.  Caridad v. Metro-North Commuter R.R., 191 F.3d 283, 291 (2d Cir. 1999).

Numerosity

Plaintiffs set forth that, between 2009 and 2015, the Army discharged 22,000 soldiers with less-than-Honorable characterizations for "misconduct" after diagnoses for mental health issues after deployments to Iraq and Afghanistan. Numerosity is presumed where more than forty class members of a putative class exist.  Consolidated Rail Corp. v. Town of Hyde Park, 47 F.3d 473, 483 (2d Cir. 1995) (numerosity is presumed at a level of forty members).  The Court finds that the numerosity requirement is satisfied.

Commonality

The commonality prong requires plaintiffs "to demonstrate that the class members suffered the same injury."  Wal-Mart Stores v. Dukes, 564 U.S. 338, 349-50 (2011).  The injury suffered must be more than a violation of the same provision of law and must depend upon a common contention that is capable of classwide resolution, such that its determination will resolve the central issue of each one of the claims.  Id. at 350.  Commonality focuses upon the "capacity of

11

a classwide proceeding to generate common answers apt to drive the resolution of the litigation." Id.

Plaintiffs set forth that the following questions of law and fact are common to the putative class:

> ( a) Whether the Defendant acted arbitrarily, capriciously, and without support of substantial evidence, in violation of the Administrative Procedure Act, by failing to consistently apply the relevant binding instructions, and in particular the Hagel Memo, when reviewing class members' discharge statuses; (b) Whether the Defendant violated the Fifth Amendment and the Administrative Procedure Act by failing to apply consistent and medically appropriate standards for PTSD and PTSD-related conditions when considering whether to upgrade the proposed class members' discharge statuses; (c) Whether the Defendant violated the Fifth Amendment and the Administrative Procedure Act by failing to give the requisite amount of consideration to class members' evidence of PTSD and PTSD-related conditions, particularly medical diagnoses, when considering whether to upgrade the class members' discharge statuses; (d) Whether the Defendant denied class members a meaningful opportunity to be heard, in violation of the Fifth Amendment, by its frequent and unlawful failures to maintain records important to the adjudication of their claims concerning property and liberty interests; (e) Whether the Defendant's refusal to upgrade the class members' less-than-Honorable discharge statuses impermissibly caused them to be stigmatized; and (f) whether the Defendant's denials of class members' discharge status upgrades are based on an undisclosed policy.

The questions common to all class members stem from the asserted failure of the ADRB to apply the Hagel Memo directive to consider the PTSD and mental health diagnoses of the class members. As this Court has previously held in a similar case relevant to review of upgrade applications by the Naval Discharge Review Board, questions concerning the procedures in place during the application evaluation--rather than the merits of individual upgrade application decisions--will render answers common to the claims of the proposed class

12

members. See Manker v. Spencer, 2018 WL 5995486, at *6 (D. Conn. Nov. 15, 2018). Accordingly, the common questions regarding whether the appropriate procedure was applied to an upgrade application can be answered and remedied through injunctive relief applied on a class basis. The Court finds that the commonality requirement is met.

Typicality

Pursuant to Rule 23(a)(3), plaintiffs' claims must be "typical of the claims or defenses of the class." The typicality requirement is met when each class member's claim arises from the same alleged unlawful conduct or the same course of conduct affects both the named plaintiffs and the class sought to be represented. Robidoux v. Celani, 987 F.2d 931, 936 (2d Cir. 1993). "Differences in the degree of harm suffered, or even in the ability to prove damages, do not vitiate the typicality of a representative's claims." Oulette v. Int'l Paper Co., 86 F.R.D. 476, 480 (D. Vt. 1980). The instant plaintiffs challenge the systematic failure of the ADRB to give proper consideration to the directive of the Hagel Memo relevant to discharge upgrade applications. The putative class members are individuals who have experienced this systemic failure that has prejudiced their upgrade applications. Accordingly, the Court finds that typicality is satisfied.

Adequacy of Representation

Defendant asserts that the proposed representatives are not appropriate because they are no longer harmed in the same way as the class due to their

receipt of upgrades.

The adequacy inquiry requires this Court to consider whether the named plaintiffs' interests "are antagonistic" to that of the other members of the class. In re Visa Check/Master Money Antitrust Litig., 280 F.3d 124, 142 (2d Cir. 2001). A class representative must have "a sufficient interest in the outcome of the case to ensure vigorous advocacy." Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. LaBranche & Co. Inc., 229 F.R.D. 395, 413 (S.D.N.Y. 2004). A plaintiff must also have attorneys who are "qualified, experienced, and generally able to conduct the litigation." In re Drexel Burnham Lambert Group, Inc., 960 F.2d 285, 291 (2d Cir. 1992). A proposed class representative with even a "sketchy" understanding of the case is deemed adequate if that representative understands his responsibilities, reviews pleadings and keeps abreast of the case by conferring with counsel. Rivera v. Fair Chevrolet Geo. Partnership, 165 F.R.D. 361, 364-65 (D. Conn. 1996).

Defendant has not shown that the named plaintiffs' interests "are antagonistic" to that of the proposed class, even if they have received upgrades to their discharge status. In fact, the named plaintiffs are particularly well qualified as class representative because they have experienced the stigma of less-than-Honorable discharges and have participated in the upgrade application process. The named plaintiffs retain an enhanced understanding of the process and considerations that are important to this action. Further, plaintiff Kennedy is the founder of the Connecticut Chapter of Iraq and Afghanistan Veterans of

14

America, a veterans advocacy membership organization. The Court finds that the named plaintiffs have a sufficient interest in the outcome of the case to ensure vigorous advocacy.

Plaintiffs are represented by attorneys with experience litigating class actions and issues involving veterans seeking discharge upgrades. Accordingly, adequacy of representation is assured.

**Federal Rule of Civil Procedure 23(b)**

Plaintiffs seek to certify this class pursuant to Rule 23(b)(2), which provides that a class may be certified if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Certification of an injunctive or declaratory judgment class is not appropriate when "each individual class member would be entitled to a *different* injunction or declaratory judgment against the defendant." Dukes, 564 U.S. at 360. As Dukes elaborated, "the key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." Id.

Here, an injunction to ensure that adherence to the directive of the Hagel Memo relevant to the review of less-than-Honorable discharges will provide relief to each class member as a whole. See Manker, 2018 WL 5995486, at *9. Accordingly, the Court finds that this case is appropriate for class certification

15

under Federal Rule of Civil Procedure 23(b)(3). The Court will grant the motion for certification.

## **CONCLUSION**

For the foregoing reasons, the motion for certification [Doc. #51] is GRANTED.

In accordance with Federal Rule of Civil Procedure 23(c)(1), the Court certifies the following class:

All Army, Army Reserve, and Army National Guard veterans of the Iraq and Afghanistan era—the period between October 7, 2001 to present—who:

> (a) were discharged with a less-than Honorable service characterization (this includes General and Other than Honorable discharges from the Army, Army Reserve, and Army National Guard, but not Bad Conduct or Dishonorable discharges);
> (b) have not received discharge upgrades to Honorable; and
> (c) have diagnoses of PTSD or PTSD-related conditions or record documenting one or more symptoms of PTSD or PTSD-related conditions at the time of discharge attributable to their military service under the Hagel Memo standards of liberal and special consideration.

The representatives will be the named plaintiffs Stephen M. Kennedy and Alicia J. Carson, and class counsel will be the Yale Law School's Veterans Legal

Services Clinic and the law firm Jenner & Block LLP. This order may be altered or amended before final judgment consistent with Federal Rule of Civil Procedure 23(c)(1)(C).

/s/Warren W. Eginton
Warren W. Eginton,
Senior U.S. District Judge

Dated this 21st day of December 2018 at Bridgeport, Connecticut.