919 THIRD AVENUE NEW YORK, NY 10022-3908

**JENNER&BLOCK** LLP

June 18, 2019

Susan J. Kohlmann
Tel +1 212 891 1681
SKohlmann@jenner.com

**VIA ECF**

The Honorable Warren W. Eginton
United States District Judge
District of Connecticut
915 Lafayette Boulevard - 2nd Floor Annex
Bridgeport, Connecticut 06604

Re:   *Kennedy et al. v. Esper*, No. 16-cv-2010 (WWE)

Dear Judge Eginton:

We represent Plaintiffs in the above-referenced matter. We write to provide the Court with a status update following Defendant's production of the administrative record and supplemental materials (collectively, the "administrative record" or "AR"), ECF Nos. 82, 84–85, and respectfully to request that the Court authorize additional discovery in this action and direct the parties to confer on a proposed discovery schedule.

Plaintiffs make this request because the administrative record provides an insufficient basis for the Court to meaningfully review and assess Plaintiffs' claims under the Administrative Procedure Act ("APA") and the Due Process Clause of the Fifth Amendment challenging the general course of conduct of the Army Discharge Review Board ("ADRB") with respect to Army veterans suffering from post-traumatic stress disorder ("PTSD"), traumatic brain injury ("TBI"), and other related mental health conditions. Defendant has taken the position that discovery is not necessary in this case. *See* ECF No. 76, ECF No. 77. On June 18, 2019, counsel for both parties spoke by phone and counsel for Defendant confirmed that Defendant's position on discovery has not changed. Defendant anticipates filing a response to this letter.

For the reasons set forth below, Plaintiffs seek leave to commence discovery. In the alternative, Plaintiffs request that the Court refer this dispute to a magistrate judge for resolution.

**I.      Relevant Background**

In 2016, Plaintiffs Stephen M. Kennedy and Alicia J. Carson, Army veterans of the conflicts in Iraq and Afghanistan respectively, filed this action individually and on behalf of similarly situated persons. Plaintiffs allege that for years the ADRB has flagrantly failed to afford veterans suffering from PTSD, TBI, and other mental health conditions the procedural protections to which they are entitled in the discharge-upgrade process. The ADRB has failed to afford them these protections despite internal directives to do so—including a memorandum issued by Secretary of Defense Chuck Hagel ("Hagel Memo") directing the ADRB to give

"liberal consideration" to diagnoses and records evidencing PTSD and similar mental health conditions. Pursuant to the APA and the Due Process Clause, Plaintiffs seek a classwide injunction to ensure that Defendant consistently applies its own standards in considering class members' PTSD when determining whether to upgrade their discharge statuses.

On December 21, 2018, the Court certified this case as a nationwide class action. ECF No. 74. The class includes all Army, Army Reserve, and Army National Guard veterans of the Iraq and Afghanistan era—the period between October 7, 2001, to the present—who: (a) were discharged with a less-than-Honorable service characterization (including General and Other than Honorable discharges, but not Bad Conduct or Dishonorable discharges); (b) have not received upgrades to Honorable; and (c) have diagnoses of PTSD or PTSD-related conditions, or records documenting one or more symptoms of PTSD or PTSD-related conditions, attributable to their military service at the time of their discharge. *Id.* The Court also denied Defendant's motion to dismiss. ECF No. 75.

The parties then turned to the issue of discovery. On March 6, 2019, Plaintiffs filed a Rule 26(f) Report, which contained a proposed case management plan. *See* Plaintiffs' Rule 26(f) Report, ECF No. 76 ("Rule 26(f) Report"). The same day, Defendant filed a motion for a status conference, in which Defendant took the position that discovery is not warranted in this case. *See* ECF No. 77. On April 5, 2019, the Court, referencing a discovery ruling in *Manker v. Spencer*, 18-cv-372 (D. Conn. Apr. 5, 2019), ECF. No. 55, ordered Defendant to produce to Plaintiffs "the full administrative records relevant to the claims of lead plaintiffs in this action in addition to any relevant policy memoranda, regulations and other documents, to the extent that these documents might provide background information." ECF No. 80. The Court also determined that it would "consider whether discovery is necessary thereafter." *Id.* Defendant filed the administrative record on May 31, 2019. *See* ECF Nos. 82–85.

Plaintiffs submit this letter in accordance with the Court's determination that it would consider further discovery after production of the administrative record. The record filed by Defendant does not provide sufficient information to resolve the issues before the Court under either the APA or the Due Process Clause. First, discovery is necessary to resolve Plaintiff's APA claims because the administrative record produced is insufficient for meaningful review of Plaintiffs' class claims. Second, regardless of the availability of extra-record discovery under the APA, Plaintiffs are entitled to discovery on their separate constitutional claims. *See, e.g.*, *Webster v. Doe*, 486 U.S. 592 (1988) (permitting discovery against agency on Fifth Amendment claims even where an APA claim was barred); *cf. Manker v. Spencer*, 18-cv-372 (D. Conn. Mar. 2, 2018) (involving a constitutional claim only under the cause of action in the APA, *see* 5 U.S.C. § 706(2)(B), not directly under the Due Process Clause).

**II.    Discovery Is Necessary to Resolve Plaintiffs' APA Claims.**

The administrative record is insufficient to allow the Court meaningfully to review Plaintiffs' APA claims. Even in APA cases, courts routinely permit discovery to supplement the administrative record "when the reviewing court simply cannot evaluate the challenged action on

the basis of the record before it." *Nat'l Audubon Soc. v. Hoffman*, 132 F.3d 7, 14 (2d Cir. 1997) (citing *Florida Power & Light Co.*, 470 U.S. 729, 744 (1985)); *see also Camp v. Pitts*, 411 U.S. 138, 142–43 (1973) (noting that discovery, including affidavits and testimony, is appropriate where there has been a "failure [in the administrative record] to explain administrative action as to frustrate effective judicial review").

That is exactly the case here. Plaintiffs have alleged systemic and systematic failures to properly implement existing law and guidance in violation of the APA. *See* Am. Compl., ECF No. 11 ¶¶ 143–48, 151–52, 164–69. The Army's systemic failures are not and could not have been reflected in the administrative record as produced, which consists largely of the discharge upgrade decisional records of two individual plaintiffs, a few publicly available guidance documents and policy memos, and a selection of Department of Defense ("DoD") and Army operating procedures. *See* AR Vols. I–III.

Each part of the administrative record that Defendant has filed is insufficient to allow the Court to meaningfully consider Plaintiffs' APA claims.

*First*, the records of two individual discharge upgrade applications are insufficient to resolve Plaintiffs' claims of systemwide and systematic APA violations across the applications of thousands of veterans. Where, as here, plaintiffs challenge an agency's general course of conduct and not a discrete adjudication, extra-record discovery is necessary because the evidence pertaining to the challenged conduct is not part of the routine administrative record. *See, e.g.*, *Milanes v. Chertoff*, No. 08-cv-2354, 2008 WL 2073420, at *1 (S.D.N.Y. May 13, 2008) (allowing extra-record discovery in an APA case where plaintiffs' claim depended on "a course of conduct" rather than "a discrete event" discernible in the administrative record); *Yakubova v. Chertoff*, No. 06-cv-3203, 2006 WL 6589892, at *4 (E.D.N.Y. Nov. 2, 2006) (holding plaintiffs in putative APA class action were entitled to discovery to explore reasonableness of agency's actions).

Mr. Kennedy's individual administrative record consists of his ADRB decisions and related documents, his military records and personnel file, his applications for a discharge upgrade or reconsideration of earlier ADRB decisions, and supporting documents that he himself submitted to the ADRB. *See* AR 1–270. The administrative record produced for Ms. Carson similarly consists of her ADRB decisions, military records and Army personnel file, and the supporting documents Ms. Carson herself submitted to the ADRB. *See* AR 271–479.

None of these documents—evidence of two discrete adjudications only—actually shed light on the agency actions Plaintiffs challenge under the APA. This case is not a challenge to the outcomes of individual discharge upgrade applications, but rather a challenge to the ADRB's *policies, practices, and procedures* that result in systemic disparities with respect to thousands of veterans with PTSD, TBI, and related conditions. *See* Am. Compl., ECF No. 11 ¶¶ 143–46, 152, 164–68, 181–87; *see also* Mem. of Decision on Mot. for Class Certification, ECF No. 74 at 12–13 ("[Q]uestions concerning the *procedures* in place during the application evaluation—rather

than the merits of individual upgrade application decisions—will render answers common to the claims of the proposed class members." (emphasis added)).

***Second***, the supplemental "background" policy materials Defendant provided as part of the administrative record do not enable the Court to review the Army's on-the-ground *implementation* of those policies. These materials do not and cannot address Plaintiffs' claims, which concern the ADRB's widespread failure to "adhere[] to the directive of the Hagel Memo" *in practice*. *See* Mem. of Decision on Mot. for Class Certification, ECF No. 74 at 15; *see also* Am. Compl., ECF No. 11 ¶ 152 (alleging a pattern and practice of arbitrary adjudication or the existence of an undisclosed Army policy); *id.* ¶¶ 143–46 (alleging that the Army only cited the relevant guidance in some of its discharge-upgrade decisions). The application of those policies by ADRB members in *practice* cannot be reflected in formal statements of policy alone.

Indeed, courts have recently held that extra-record discovery is imperative where a court must determine whether an agency adhered *in practice* to its obligations. In *Damus v. Nielsen*, Judge Boasberg authorized discovery in a provisionally certified Rule 23(b)(2) class action of detained asylum seekers alleging that U.S. Immigration and Customs Enforcement had failed to follow internal directives regarding procedures used in adjudicating certain requests for parole and was instead "engaging in systematic detention" of asylum seekers. 328 F.R.D. 1, 2 (D.D.C. 2018). The court there ordered discovery to discern whether the defendants had violated the court's already-granted preliminary injunction ordering the agency to follow its own internal directives. The same principle—that discovery may be necessary to assess agency behavior that is not apparent from the administrative record—applies here. *Id.* at 3.

Similarly, Plaintiffs here assert that the ADRB fails to comply with agency directives, namely the Hagel Memo. *See, e.g.*, Am. Compl., ECF No. 11 ¶¶ 166–68, 181–87. This requires the Court to evaluate evidence regarding whether the ADRB has failed to properly *implement* its policies—simply providing the policies themselves is not enough. Discovery might therefore include, among other materials, interrogatories and document requests regarding Defendant's practices related to discharge-upgrade applications and implementation of agency guidance; depositions of individuals involved with the ADRB's day-to-day practices with respect to claims of PTSD, TBI, and related mental health conditions; information regarding training of ADRB personnel and quality control; and expert discovery on the technical aspects of this case, such as the statistical landscape of ADRB decisions and the role PTSD and related conditions play in those decisions.

The following are a few non-exhaustive examples of how the background materials provided by Defendant fall short in illustrating the Army's *implementation* of its policies:

- Defendant provided a policy memorandum indicating at a high level that the Army implemented the Hagel Memo but did not provide any materials detailing what steps have been taken to implement it or ensure it is followed in practice. *See* AR 585.

- The only internal training documents contained in the background materials are too new to say anything about what training ADRB members received on claims based on PTSD and related conditions prior to six months ago. *See* AR 480, 517 (PowerPoint presentation dated April 24, 2019, and a short briefing dated November 26, 2018).

- Although the Army Military Review Board operating procedures that were produced contain sporadic references to PTSD and TBI, they do not provide any substantive guidance to Army employees evaluating discharge-upgrade applications involving PTSD or TBI, nor do they explain how the Hagel Memo's "liberal consideration" mandate was implemented *in practice*. *See* AR 526.

- The operating procedures require that for PTSD/TBI cases, at least one Board member must be a physician, psychologist, or psychiatrist but provide no detail on who those individuals are, how they are chosen, what they are told about how to apply the Hagel Memo and other associated guidance, or how those individuals actually evaluate claims of PTSD, TBI, and related mental health conditions in practice. *See* AR 565.

*Third*, Defendant compiled these materials as documents that "might provide background information." ECF No. 80 (ordering Defendant to produce "any relevant policy memoranda, regulations and other documents, to the extent that these documents might provide background information"). Defendant does not contend that these materials comprehensively answer the questions raised by Plaintiffs' claims. More importantly, it is unclear what documents Defendant may have chosen to omit from this compilation. Plaintiffs—and this Court—should not have to rely on Defendant's compilation of "background information" as the basis for the Court's assessment of its claims. *See In re Nielsen*, No. 17-3345 (2d Cir. Dec. 27, 2017) ("Allowing the Government to determine which portions of the administrative record the reviewing court may consider would impede the court from conducting the 'thorough, probing, in-depth review' of the agency action with which it is tasked.").

*Fourth*, and last, the Court should permit discovery for the additional reason that the parties simply do not agree about what would constitute the complete administrative record. The APA requires this Court to conduct "plenary review of the Secretary's decision, . . . to be based on the full administrative record that was before the Secretary at the time he made his decision." *Citizens to Pres. Overton Park v. Volpe*, 401 U.S. 402, 420 (1971); *see also* 5 U.S.C. § 706 (in evaluating agency action, "the court shall review the whole record"). Thus, when parties dispute what should be included in the complete administrative record, courts have found additional discovery necessary to resolve the dispute. *See, e.g.*, *Dopico v. Goldschmidt*, 687 F.2d 644, 654 (2d Cir. 1982) (granting additional discovery to disabled persons bringing APA claims against local mass transit officials where parties disputed the limits of the record). In this case, although Defendant has produced certain policy documents related to the ADRB's policies, they do not fully document the agency's general conduct, current policy approach, or actual practice with respect to veterans with PTSD and related conditions. Discovery is therefore necessary.

### III.  Discovery is Necessary to Resolve the Plaintiffs' Due Process Claim.

In addition to their APA claims, Plaintiffs have alleged that Defendant violated the Due Process Clause of the Fifth Amendment by failing to consistently apply its own discharge upgrade procedures, thereby denying applicants to the ADRB the opportunity for a meaningful hearing. *See* Am. Compl., ECF No. 11 ¶¶ 170–79. The Court has denied the government's motion to dismiss these due process claims. *See* ECF No. 75. Therefore, regardless of the availability of extra-record discovery under the APA, Plaintiffs are entitled to discovery on these separate constitutional claims. *See, e.g.*, *Webster v. Doe*, 486 U.S. 592 (1988) (permitting discovery against agency on Fifth Amendment claims even where an APA claim was barred).

It is well established that a "direct constitutional challenge is reviewed independent of the APA" and provides an additional basis for extra-record discovery. *Grill v. Quinn*, 2012 WL 174873, at *2 (E.D. Cal. Jan. 20, 2012) (collecting cases). Because courts must "make an independent assessment of a citizen's claim of constitutional right when reviewing agency decision-making," *Porter v. Califano*, 592 F.2d 770, 780 (5th Cir. 1979), review of such a claim is not limited to the record before the agency, and the Court may rely on materials "even though they were not before the agency upon administrative review," *Rydeen v. Quigg*, 748 F. Supp. 900, 906 (D.D.C. 1990). Especially where the administrative record is insufficient to allow meaningful judicial review of a constitutional claim, courts have not hesitated to adduce evidence beyond the agency record in order to fulfill these constitutional obligations. *See, e.g.*, *id.* at 906; *Saget v. Trump*, No. 18-cv-1599, 2019 WL 1568755, at *61 (E.D.N.Y. Apr. 11, 2019) (considering plaintiffs' "procedural due process claims based on the full record"); *cf. McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479, 496 (1991) (recognizing the importance of the "factfinding and record-developing capabilities of a federal district court" in constitutional challenges to agency action in which the administrative record proves insufficient).

As discussed above, this case concerns the Army's *systemwide* failure to consistently implement its policies and procedures. *See* Am. Compl., ECF No. 11 ¶¶ 170–79. This Court cannot meaningfully review Plaintiffs' allegations of systemic failure unless it looks at the Army's systemic patterns and procedures. The administrative record as produced, therefore, is insufficient to evaluate Plaintiffs' classwide Due Process Clause claims. These documents will not, for example, allow the Court to determine whether the ADRB's implementation of the Hagel Memo and related standards was so inconsistent across the universe of adjudications that it denied applicants with PTSD and related conditions a meaningful opportunity to present their cases and be heard in violation of the Due Process Clause. Am. Compl., ECF No. 11 ¶¶ 174–76. It will not allow the Court to adjudicate whether this failure to implement binding Defense Department instructions resulted from an undisclosed secret or unofficial policy. *See id.* Nor will it allow the Court to assess whether the Army's frequent loss of service members' records, which it has a duty to maintain, has impaired class members' rights under the Due Process Clause and should give rise to spoliation-of-evidence-type inferences. *See id.* ¶ 177. Further, review of policy documents will yield nothing relevant to assessing the Army's on-the-ground *application* of those policies to class members' discharge upgrade applications. *See id.* ¶¶ 172–74.

A probing inquiry into the Army's haphazard documentation and inconsistent application of legal standards, including depositions of ADRB officials and expert testimony, is therefore the only way to obtain the evidence needed to evaluate Plaintiffs' Due Process claims. If the Court limited its review to the administrative record, "it would be impossible to conduct the full and thorough analysis" that Plaintiffs' constitutional claim requires. *Saget*, No. 18-cv-1599, 2019 WL 1568755, at *61 (permitting extra-record discovery against federal agency on plaintiffs' constitutional claims, including depositions of agency officials).

Finally, discovery is especially appropriate on a constitutional challenge to the procedures by which an agency carries out an action, rather than to the outcome of that action. *See McKoy v. Spencer*, 16-cv-1313, 2019 WL 400615, at *11 (D.D.C. Jan. 31, 2019) ("If the [constitutional] challenge to agency action does not require the evaluation of the substance of the agency's decision made on the administrative record, then discovery is permissible."); *Bellion Spirits, LLC v. United States*, 335 F. Supp. 3d 32, 43 (D.D.C. 2018); *Rydeen v. Quigg*, 748 F. Supp. 900, 906 (D.D.C. 1990). In *McKoy*, for example, Judge Colleen Kollar-Kotelly permitted extra-record discovery on a former Navy dentist's First and Fifth Amendment retaliation and backpay claims because her claims "d[id] not require the Court to evaluate the substance and the merit of . . . the agency's decision" to retract her credentials. *Id*. at *11. Here, Plaintiffs' constitutional claims challenge not the outcomes of individual discharge-upgrade adjudications, but rather the deficient procedures by which the ADRB reached those outcomes. *Id.* Plaintiffs are therefore entitled to extra-record discovery because they "challenge the procedures by which [Defendant] reach[es] its conclusion[s]" in upgrade applications rather than the conclusions themselves. *Bellion Spirits, LLC*, 335 F. Supp. 3d at 43.

## IV.     The Court Should Enter a Scheduling Order Governing Further Discovery.

Accordingly, Plaintiffs respectfully request that the Court authorize additional discovery in this action and direct the parties to confer on a proposed discovery schedule. In the alternative, Plaintiffs request that the Court refer this dispute to a magistrate judge for resolution.

Respectfully,

/s/ Susan J. Kohlmann

| | |
|---|---|
| Andrew DeGuglielmo, Law Student Intern | Susan J. Kohlmann, *pro hac vice* |
| Samuel Davis, Law Student Intern | Jeremy M. Creelan, *pro hac vice* |
| Samuel Frizell, Law Student Intern | Jacob L. Tracer, *pro hac vice* |
| Jordan R. Goldberg, Law Student Intern | Ravi Ramanathan, *pro hac vice* |
| Catherine E. McCarthy, Law Student Intern | William S.C. Goldstein, *pro hac vice* |
| Renée A. Burbank, Supervising Attorney, ct30669 | Jenner & Block LLP |
| Michael J. Wishnie, Supervising Attorney, ct27221 | 919 Third Avenue |
| Veterans Legal Services Clinic | New York, NY 10022-3908 |
| Jerome N. Frank Legal Services Org. | Tel: (212) 891-1678 |
| Yale Law School† | SKohlmann@jenner.com |
| P.O. Box 209090 | |
| New Haven, CT 06520-9090 | |
| Tel: (203) 432-4800 | |
| michael.wishnie@ylsclinics.org | |

† This letter does not purport to state the views of Yale Law School, if any.