

U.S. Department of Justice

*United States Attorney*
*District of Connecticut*

_____

*Connecticut Financial Center*  (203) 821-3700
*157 Church Street, 25th Floor*  *Fax (203) 773-5373*
*New Haven, Connecticut  06510*  www.usdoj.gov/usao/ct

August 30, 2019

The Honorable Warren W. Eginton
United States District Judge for the District of Connecticut
915 Lafayette Boulevard – 2nd Floor Annex
Bridgeport, Connecticut 06604

Re:   *Kennedy, et al. v. McCarthy*,[1] No. 3:16-cv-02010 (WWE)

Dear Judge Eginton:

      This letter responds to Plaintiffs' letter of June 18.  Defendant respectfully requests the Court deny Plaintiffs' request for extra-record discovery because they cannot meet the high standard for supplementing the record or taking discovery in this Administrative Procedure Act (APA) case.  If the Court believes, in view of Plaintiffs' letter and this response, a status conference is appropriate, the Defendant respectfully would renew its motion for a status conference.

      It is Defendant's position that this action arises under the APA.[2]  Plaintiffs agree. ECF No. 76 at 4.  This Court, as well, has noted that Plaintiffs' claims "stem from the asserted failure of the ADRB to apply the Hagel Memo directive to consider PTSD and mental health diagnoses of the class members." ECF No. 74 at 12.  Thus, Plaintiffs' request for discovery is exceptional and is subject to a high level of scrutiny.  "Courts grant motions to supplement the administrative record only in exceptional cases." *Fund for Animals v. Williams*, 391 F. Supp. 2d 191, 197 (D.D.C. 2005).  Extra-record discovery is generally unnecessary in APA actions and, here, for several reasons, it is unnecessary for resolving the issues upon which the Court certified the class.  As detailed below discovery is not warranted.  First, because the enhancement of the administrative record following remand resolved most of Plaintiffs' claims.  Second, the discovery proposed by the Plaintiffs exceeds the bounds of review under the APA. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 891 (1990).  Third, as this matter is subject to the APA, this Court should set a briefing schedule for summary judgment on the administrative record as the appropriate means to address the Plaintiffs' constitutional due process claims, since no other basis for a

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Ryan McCarthy, in his official capacity as Acting Secretary of the Army, is automatically substituted for the Honorable Mark Esper.

[2] Additionally, the Court granted a voluntary remand, ECF No. 29); concurred with the discovery ruling in *Manker v. Spencer*, 18-cv-372 (D. Conn. Apr. 5, 2019), ECF No. 55; and directed the Defendant to produce "the full administrative record," ECF No. 80.

constitutional claim exists.  *See E.E.O.C. v. Peabody W. Coal Co.*, 610 F.3d 1070, 1085-86 (9th Cir. 2010).

      I.      **Relevant Background**

In November 2010, after considering Plaintiff Kennedy's petition for changes to his discharge, the ADRB declined to upgrade his discharge or change the reason for his discharge.

On September 3, 2014, Secretary of Defense Chuck Hagel issued a memorandum that addressed "petitions of Vietnam Veterans to Military Department Boards for Correction of Military/Naval Records (BCM/NR) for the purpose of upgrading their discharges based on claims of previously unrecognized Post Traumatic Stress Disorder (PTSD)."  AR 588 (The "Hagel Memo").  The Hagel Memo provided that "BCM/NRs will fully and carefully consider every petition based on PTSD brought by a Veteran." *Id.*  This supplemental guidance required BCM/NRs to give "liberal consideration" to "petitions for changes in characterization of service" related to PTSD.  AR 590.  The Secretary of the Army John McHugh then issued Army Directive 2014-28 (Requests to Upgrade Discharge by Veterans Claiming Post Traumatic Stress Disorder), implementing the Hagel Memo by directing the Army Review Boards Agency (ARBA) to augment its processes outlined in 10 U.S.C. § 1552 and the Army Regulation governing the Army Board for the Correction of Military Records (ABCMR).  *Id.* at 585.

In October of 2015, the ADRB considered the named Plaintiffs' petitions for changes to their characterization of service and declined to upgrade their discharges. *Id.* at 24-29, 287, 289-93.  The Plaintiffs did not request the ADRB to address or apply the standards required of the BCM/NRs in the Hagel Memo.  Further, the ADRB decisions were unclear as to whether the ADRB applied the guidance of the Hagel Memo.  *See id.*

In December of 2016, Plaintiff Kennedy commenced this action. ECF No. 1.  Later that month, the President signed into law the National Defense Authorization Act for Fiscal Year 2017, which amended 10 U.S.C. § 1553 and required Discharge Review Boards ("DRBs") to review with "liberal consideration" a veteran's claim "that post-traumatic stress disorder or traumatic brain injury potentially contributed to the circumstances resulting in the discharge of a lesser characterization."  114 Pub. L. 328 § 535 (Dec. 23, 2016).  The amended complaint was filed in April 2017.  ECF No. 11.

On August 25, 2017, Undersecretary of Defense Anthony Kurta issued a memo that provided guidance clarifying and expanding on the Hagel Memo (the "Kurta Memo").  AR 521-25.  The Kurta Memo specifically stated that the "supplemental guidance provided by then-Secretary Hagel on September 3, 2014, as clarified in this guidance, also applies to both BCM/NRs and DRBs."  *Id.* at 524.

Subsequently, on September 29, 2017, the Court granted Defendant's Motion for Voluntary Remand.  ECF No. 29.  The remand was granted in part to "serve the interest of judicial economy by providing a full administrative record for the Court to assess the merits of plaintiffs' claims."  *Id.* at 5.  The remand permitted Defendant to "revisit the original applications that are the subject of this litigation."  *Id.*  The Court noted that Defendant intended to clarify the existing record, and specifically clarify whether the relevant ADRB decisions "applied the guidance of the Hagel Memo."  ECF No. 29 at 2-3.  The Court's order also provided that Plaintiffs could "supplement the existing record with the documents that cannot be located or that would clarify the existing record."  *Id.* at 5.

As ordered, Defendant produced the "the full administrative records relevant to the claims of the lead plaintiffs in this action in addition to [] relevant [background] policy memoranda, regulations and other documents, to the extent that these documents might provide background information." ECF No. 80; *see* ECF Nos. 82-85.

## II. The enhanced administrative record is sufficient for the Court to meaningfully review the Army's actions

### a. The APA instructs that challenges to agency action be reviewed on the basis of the administrative record.

A "court reviewing an agency decision is confined to the administrative record compiled by that agency when it made the decision." *Nat'l Audubon Soc'y v. Hoffman*, 132 F.3d 7, 14 (2d Cir. 1997) (citing *Florida Power*, 470 U.S. at 743-44; *Camp v. Pitts*, 411 U.S. 138, 142 (1973)). The Second Circuit allows only narrow exceptions to that rule. "Supplementation of that record upon remand to the agency may be necessary when the record does not support the agency action, when the agency has not considered all relevant factors, or when the reviewing court simply cannot evaluate the challenged action on the basis of the record before it." *Id.* (citing *Florida Power*, 470 U.S. at 744). An "extra-record investigation by the reviewing court may be appropriate when there has been a strong showing in support of a claim of bad faith or improper behavior on the part of agency decision makers or where the absence of formal administrative findings makes such investigation necessary in order to determine the reasons for the agency's choice." *Id.* But this narrow exception does not apply here.

### b. The administrative record is sufficient to analyze Plaintiffs' claims based on failure to apply the Hagel Memo or lack of clarity whether the Hagel Memo was applied.

Defendant provided documents sufficient to analyze the questions that Plaintiffs asserted were common to the class. The Plaintiffs disagree and seek to renew their discovery requests filed *before* the enhanced administrative record was produced, *see* ECF No. 76; despite the Court certifying the class on the common questions regarding whether the ADRB applied the appropriate procedures. ECF No. 74 at 12-13. The Court should find the enhanced administrative record sufficient to address the very questions upon which it certified the class.

Plaintiffs claim that Defendant may have violated the APA by not following the Army's own rules and procedures, specifically the Hagel Memo. ECF No. 51-1 at 19; *see also* ECF No. 74 at 12. But the Defendant has provided sufficient documentation to analyze whether the Army complied with both the Hagel and Kurta Memos. Notably, Defendant provided AD 2014-28 which directed Army Review Boards Agency to implement the Hagel Memo for all boards reviewing characterization of discharges. *See* AR 585. Defendant also provided information on the standards applied by the ADRB when considering discharge upgrade applications, including the Military Review Boards Standard Operating Procedure and the Kurta Memo. *See* AR 523; 526-584. Indeed, these documents speak directly to the Plaintiffs' claims regarding the rules and procedures applicable to the ADRB when it considers discharge upgrades.

Simply put, the remand in this case has rendered moot Plaintiffs' argument that the administrative record is insufficient to address "whether the appropriate procedure was applied to an upgrade application." ECF No. 74 at 13.  Although Plaintiffs can, and still do, contend that the applicable procedures were not appropriately applied, *see* ECF No. 97, discovery is not needed to make that determination.   This case should be resolved on the administrative record.

The current administrative record is adequate to evaluate the ADRB's compliance with policies, practices, and procedures.  Plaintiffs seek to assess the "on-the-ground application of [Army] policies to . . . discharge upgrade applications." ECF No. 97 at 6; *see also* Am. Compl., ECF No. 11 ¶¶172–74.  The Court, via the administrative record, can review and evaluate the ADRB's on-the-ground actions, application of its procedures, and explanations with regard to the two class representatives' claims at three different times—in 2010, again in 2015, and subsequent to the remand in 2017.  *See* AR 9-15; 24-29; 68-71; 271-281; and 289-293.  Each ADRB Case Report and Directive explains the procedures, the application of the policies, and the decisions.  *Id.*; *see also* AR 617-620.  The administrative record also includes multiple documents illuminating what constitutes the Army's policy in regard to the ADRB.  *See e.g.*, AR 526; 592; 644; 648.  The record provides both the agency actions and the procedures against which the Court can conduct a review under the APA.

Additionally, despite Plaintiff's claim to the contrary, the agency properly compiled the certified administrative record.  Beyond the individual records for each named Plaintiff, including the full ADRB decisions and military personnel files, the administrative record was enhanced with the relevant policies, regulations, and other documents which explain the ADRB's procedures and considerations.  *See, e.g.,* AR 526; AR 592; AR 644; AR 648.  Army staff manually reviewed the electronic repository where ADRB decision records are maintained and complied the records related to the claims of the named Plaintiffs.  Military Review Boards staff collected and provided available background documents, and the ARBA legal office ensured the record was complete.  Staff at the Litigation Division of the United States Army Legal Services Agency then reviewed these documents for completeness and accuracy, and supplemented these records with copies of the named Plaintiffs' Army Military Human Resources Records.  *See* ECF No. 82; 84; 85.  The Chief of the Military Personnel Litigation Branch, Lieutenant Colonel Edward Bahdi, certified these records.  *Id.*  Plaintiffs' suggestion that Defendant chose to omit documents from the administrative record is belied by sworn evidence and, in any event, Plaintiffs have failed to specify which documents they believe should have been, but were not included.  ECF No. 97 at 5.  Plaintiffs also reason that additional discovery should be allowed because Plaintiffs consider the administrative record incomplete.  *Id*.  However, Plaintiff's opinion does not necessitate expanding the record.  Rather, Plaintiffs must make a *strong showing* of bad faith, impropriety, or missing formal administrative findings. *Cf. Nat'l Audubon Soc'y*, 132 F.3d 7 at 14 (citing *Florida Power*, 470 U.S. at 744).  Plaintiffs have presented no evidence in this regard, let alone that which makes a strong showing of bad faith.  Furthermore, the Army is entitled to a strong presumption that it properly designated the documents included in the administrative record.  *See, e.g., Bar MK Ranches v. Yuetter*, 994 F.2d 735, 739-740 (10th Cir. 1993); *Tafas v. Dudas*, 530 F. Supp. 2d 786, 795 (E.D. Va. 2008) (citing cases).

### III.     Review of Plaintiffs' due process claims are limited to the administrative record

Plaintiffs correctly recognize that discovery is restricted by the APA.  ECF No. 76 at 4.  The fundamental principles of administrative law are not discarded simply because Plaintiffs' claims rely on constitutional principles.  *Charlton Mem. Hosp. v. Sullivan*, 816 F. Supp. 50, 51 (D. Mass. 1993) (plaintiff's equal protection claim "cannot so transform the case that it ceases to be primarily a case

involving judicial review of agency action"); *cf. Harkness v. United States*, 727 F.3d 465, 473 (6th Cir. 2013) ("[T]he review scheme does not carve out an exception for constitutional claims."). Judicial review under the APA, after all, expressly includes claims that agency action is "contrary to constitutional right."  5 U.S.C. § 706(2)(B).  Courts across the country therefore routinely restrict review to the administrative record in cases that raise constitutional claims. *See, e.g.*, *Bellion Spirits, LLC v. United States*, 335 F. Supp. 3d 32, 44 (D.D.C. 2018); *Chiayu Chang v. U.S. Citizenship & Immigration Servs.*, 254 F. Supp. 3d 160, 161 (D.D.C. 2017); *Jarita Mesa Livestock Grazing Ass'n v. U.S. Forest Serv.*, 58 F.Supp. 3d 1991, 1237-38 (D.N.M. 2014); *Tafas v. Dudas*, 530 F. Supp. 2d 786, 803 (E.D. Va. 2008); *Harvard Pilgrim Health Care of New England v. Thompson*, 318 F. Supp. 2d 1, 10 (D.R.I. 2004). Because judicial review of Plaintiffs' due process claims is available under the APA, this Court can, and should, rely on the administrative record in addressing these claims.

### IV. The Plaintiffs' requests for discovery not only lack precedent, but also cross the line into "wholesale" policy analysis.

Even if the Court were to find extra-record discovery appropriate here, Plaintiffs' discovery requests far exceed the scope of extra-record discovery permissible under the Second Circuit's narrow exception.  Plaintiffs' requests seek discovery into wholesale policy analysis, rather than the government actions relevant this case.  The Court should not allow Plaintiffs to do so.  Even if extra-record discovery were warranted here—and it is not—deviations from the administrative record must be "limited" and meant to mitigate "when the administrative record is *so* inadequate as to prevent the reviewing court from effectively determining whether the agency considered all . . . consequences of its proposed action." *Nat'l Audubon Soc'y*, 132 F.3d at 15 (emphasis added).  Furthermore, because an APA challenge must be tied directly to a "discrete action," Plaintiffs' attempt to launch a "broad programmatic attack" on agency practice is inappropriate. *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 56, 63 (2004).  This is because 1) the APA explicitly limits the types of actions that are challengeable (*see* 5 U.S.C. §§ 551(4), (6), (10), (11)) and 2) "the offices of the Department or the halls of Congress [are] where programmatic improvements are normally made," not "by court decree." *See Lujan*, 497 U.S. at 891.[3]

Plaintiffs, accordingly, may not transform this action into one broadly challenging ADRB "policies, practices, and procedures." *See* ECF No. 97 at 3 (emphasis omitted).  Plaintiffs' requests, in fact, are of the same "wholesale" nature the Supreme Court rejected in *Lujan*. *Lujan*, 497 U.S. at 892.  To be sure, the review Plaintiffs seek concerns far more than whether the ADRB failed to comply with the Hagel Memo guidance in this case, but also to assess ADRB practices generally, including how it effects quality control, constitutes its boards, and trains its board members. *See* ECF No. 97 at 4-5.  In fact, Plaintiffs' interrogatories go even further, requesting information on the implementation of agency guidance; depositions of individuals involved with the ADRB's day-to-day practices; and "expert discovery on technical aspects of this case." *Id.* at 4.

---

[3] Plaintiffs fail to recognize that this is exactly what occurred in this case.  First, Congress made the "liberal consideration" standard under the Hagel Memo applicable to the DRBs.  10 U.S.C. § 1553(d)(3).  Second, as a result of public feedback and an internal review, the DoD issued the Kurta Memo that made programmatic improvements to the discharge upgrade process. AR 521.  These improvements included making the Hagel Memo applicable to the DRBs and giving additional guidance that provided for an even more favorable review for veterans. *Id.* at 521-25.  Instead of seeking the relief that Congress and the DoD afforded to veterans like the named Plaintiffs, the Plaintiffs want to the Court to wind back the clock and make the Hagel Memo applicable to class members' ADRB petitions before it was even issued.

**V.     In the alternative, the correct course is to remand to the agency for further explanation.**

Additionally, should the Court find that the Administrative record remains insufficient to resolve Plaintiffs' *discrete* claims, a remand to the agency to address any specific deficiencies in the record would allow the board to further develop the record with precision, addressing matters at issue rather than a wholesale exploration of the agencies policies and practices.[4]  Indeed, "if the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985).

For the aforementioned reasons, the Defendant respectfully asks the Court to either deny Plaintiffs' request for extra-record discovery or Remand for Agency explanation.

JOHN H. DURHAM
UNITED STATES ATTORNEY


/S/ David C. Nelson
David C. Nelson
Assistant U.S. Attorney
Joseph G. Nosse
Major, U.S. Army

---

[4] In their request for discovery, Plaintiffs cite case law that allows extra-record discovery within the ambit of the APA. However, the cases Plaintiffs cite show the exception that proves the rule.  Extra-record discovery may be allowed only when the Plaintiffs challenge an agency's course of conduct that is not captured in a discrete act, such as agency delay.  *See, e.g., Milanes v. Chertoff*, No. 08 Civ. 2354 (LMM), 2008 U.S. Dist. LEXIS 39218, at *5 (S.D.N.Y. May 13, 2008) (ordering extra-record discovery "since agency delay is not necessarily a discrete event resulting from a decision based upon some sort of administrative record, but may be simply a course of conduct, after-the-event justifications for which may need to be explored by Plaintiffs."; *Yakubova v. Chertoff*, No. 06 CV 3203 (ERK) (RLM), 2006 U.S. Dist. LEXIS 97655, at *8-12 (E.D.N.Y. Nov. 2, 2006) (ordering extra-record discovery because insufficient information existed in the record to analyze Plaintiffs' claims of inordinate INS naturalization application delay).  Unlike in *Milanes* and *Yakubova*, Plaintiffs here raise questions that the administrative record can answer, but if after meaningful review by the Court, the Court determines the record deficient, then remand to remedy the specific deficiency is the most appropriate course of action.