# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| STEPHEN M. KENNEDY and ALICIA J. CARSON, on behalf of themselves and all others similarly situated, | No. 3:16-cv-2010-WWE |
| *Plaintiffs*, | |
| v. | September 27, 2019 |
| RYAN D. McCARTHY, Acting Secretary of the Army, | |
| *Defendant*. | |

## PLAINTIFFS' RULE 26(f) REPORT OF PARTIES PLANNING MEETING

| | |
|---|---|
| **Date Complaint Filed:** | December 8, 2016 |
| **Date Complaint Served:** | December 23, 2016 |
| **Date of Defendant's Appearance:** | February 21, 2017 |
| **Date Amended Complaint Filed:** | April 17, 2017 |
| **Date Answer Filed:** | April 22, 2019 |

On September 6, the Court ordered the parties "to confer and file a proposed discovery plan that addresses the scope of discovery sought and that proposes an agreed upon schedule within 21 days of this order's filing date," Discovery Order, ECF No. 101.  Pursuant to the Court's Discovery Order, as well as Fed. R. Civ. P 16(b), 26(f), D. Conn. L. Civ. R. 16, counsel for Plaintiffs drafted a proposed discovery plan, forwarded it to counsel for Defendant, and requested an opportunity to confer. Counsel for parties spoke by telephone on September 25, 2019. The participants were:

- Michael Wishnie, Renée Burbank, William S.C. Goldstein, Ravi Ramanathan, Jacob L. Tracer, Julia Coppelman, Samuel Davis, Andrew DeGuglielmo, and Samuel Frizell for Plaintiffs Stephen M. Kennedy and Alicia J. Carson;

- David Nelson and Michelle McConaghy for Defendant Ryan D. McCarthy.

Defendant's counsel expressed the view that this case is exempt from Rule 26(f) under the District of Connecticut local rules and no Rule 26(f) conference should be held, objected generally to Plaintiffs' proposal, and declined to make any counter-proposal regarding specific elements of Plaintiffs' proposed discovery plan, such as fact and expert discovery deadlines, number of depositions and interrogatories, topics appropriate for discovery, or stipulated facts. Plaintiffs maintain that the Court instructed the parties "to confer and file a joint discovery plan" by September 27, 2019, Discovery Order, ECF No. 101, but in light of Defendant's position, no joint plan was developed. Accordingly, Plaintiffs propose the following discovery plan:

## I.     Certification

Undersigned counsel, after consultation with their clients, certify that (a) they have discussed the nature and basis of the Plaintiffs' claims and any possibilities for achieving a prompt settlement or other resolution of the case; and (b) they have developed the following proposed case management plan. Counsel further certify that they have forwarded a copy of this report to their clients.

## II.    Jurisdiction

### A.  Subject-Matter Jurisdiction

This Court has jurisdiction under 28 U.S.C. § 1331. This action arises under the Administrative Procedure Act, 5 U.S.C. § 706, and the Fifth Amendment of the Constitution. Subject matter jurisdiction is not contested.

2

### B.  Personal Jurisdiction

Personal jurisdiction is not contested.

## III.    Brief Description of Case

This case concerns the discharge of military veterans who have post-traumatic stress disorder (PTSD), traumatic brain injury (TBI), or other related mental health conditions as a result of their military service or as a result of an experience of military sexual trauma (MST). The Army Discharge Review Board (ADRB) is charged by Congress with correcting the official military records of veterans who were improperly or inequitably discharged from the United States Army. The Court has certified a class challenging the procedures by which the ADRB adjudicates these claims and has denied the Secretary's motion to dismiss. *See* ECF Nos. 74, 75.

### A.  Claims of Plaintiffs

#### 1.  Statutory Claims

1.  By failing to consider PTSD and related conditions in reviewing Plaintiffs' and other class members' applications for discharge upgrades, including by failing to meaningfully apply instructions contained in the Hagel Memo, which directs the ADRB to give "liberal consideration" to discharge-upgrade applications from veterans alleging PTSD or related mental-health conditions, *see* Ex. 1 to Am. Compl., ECF No. 11-1, Memorandum from Chuck Hagel, Secretary of Defense ("Hagel Memo") (Sept. 3, 2014), and by failing to give reasoned explanations for its failure to consistently apply relevant legal standards, the Secretary has acted arbitrarily and capriciously, in abuse of his discretion, and contrary to law, in violation of the Administrative Procedure Act (APA), 5 U.S.C. § 706(2)(A) (2018).

2.  By frequently and unlawfully failing to maintain records that it professes are important to the resolution of applicants' cases, the Secretary has acted in violation of the APA, *id.* § 552a(e)(5).

**2.  Constitutional Claims**

1.  By not consistently or meaningfully applying standards that appropriately consider Plaintiffs' and other class members' PTSD and failing to accord liberal consideration of applicants' claims, Defendant has failed to follow its own rules, thereby denying applicants the due process protections guaranteed to them by the Fifth Amendment to the U.S. Constitution.

2.  By arbitrarily and baselessly denying upgrade applications without addressing applicants' claims or, in the alternative, denying applications on the basis of an undisclosed policy, the Secretary has denied veterans a meaningful opportunity to be heard in violation of the Fifth Amendment of the U.S. Constitution.

3.  The Secretary's persistent failure to maintain records important to the disposition of applicants' cases also denies applicants a meaningful opportunity to be heard, in violation of the Fifth Amendment to the U.S. Constitution.

**3.  Relief Sought**

1.   Grant all appropriate and equitable relief to redress past injury and to restrain future injury to class members;

2.   Direct Defendant to institute measures sufficient to ensure that defendant establishes constitutionally and statutorily compliant adjudication procedures, including but not limited to:

    a.  publication of any secret policies used in adjudicating claims before the ADRB, improved training of agency personnel, and clarified evidentiary standards compliant with the Hagel Memo;

    b.  meaningful and consistent application of its own procedural standards in considering the effects of class members' PTSD when determining whether to upgrade their discharge statuses;

    c.   implementation of recordkeeping practices that ensure that all claimants' records remain secure and accessible to respective claimants; and

    d.   recovery of all misplaced or discarded records relevant to the adjudication of individuals' claims.

3.   Direct Defendant to reconsider under lawful procedures all denials of discharge upgrade applications of class members whose records indicate diagnoses or symptoms of post-traumatic stress disorder (PTSD), traumatic brain injury (TBI), or other related mental health conditions that they developed as a result of their military service or as a result of an experience of military sexual trauma (MST), and to provide notice to those class members eligible for reconsideration;

4.   Direct Defendant to provide notice to all class members who have not applied for discharge upgrades, that they may be eligible for a discharge upgrade according to the standards described in the Hagel Memo and all subsequent agency policies;

5.   Award attorneys' fees and costs to Plaintiffs; and

6.   Grant any other relief that the Court deems just and proper.

## IV.   Plaintiffs' Proposed Statement of Undisputed Facts

Defendant declined to confer on any of the following material facts. However, in its answer to Plaintiffs' amended complaint, ECF No. 81, Defendant did not dispute most of the following material facts. Further, Defendant's filing of the administrative records for the two named Plaintiffs, Kennedy and Carson, ECF Nos. 84-85, supports finding additional facts to be undisputed.

1.   The ADRB was established by the Secretary of the Army pursuant to 10 U.S.C. § 1553 (2018) to review the discharge or dismissal of any former member of the military service.

2.   The procedures and standards for ADRB review of discharge upgrade applications are found in 30 C.F.R. Part 70 (2018), Department of Defense (DoD) Instruction 1332.28, and other DoD and Army policy and guidance memoranda.

3.   On September 3, 2014, the Secretary of Defense issued a memorandum providing supplemental guidance to the Boards for Correction of Military Records, which are authorized under 10 U.S.C. § 1552 (2018), to provide liberal consideration to former members with post-traumatic stress disorder (PTSD) or related conditions. *See* Hagel Memo. Under the Hagel Memo, PTSD and "PTSD-related conditions" must be regarded as "potential mitigating factors in the misconduct that caused the under other than honorable conditions characterization of service" in Boards' consideration of discharge upgrade applications. *Id.*

4.   The ADRB began applying the Hagel Memo in some cases even though by its terms the memo refers only to the Boards for Correction of Military Records and the instructions had not been codified in any statute. *See, e.g.*, ADRB Decision No. AR20150017587, May 9, 2016, http://boards.law.af.mil/ARMY/DRB/CY2015/AR20150017587.txt.

5.   On December 23, 2016, the President signed legislation amending 10 U.S.C. § 1553 to require Discharge Review Boards to review cases with "liberal consideration" where "post-traumatic stress disorder or traumatic brain injury potentially contributed to the circumstances resulting in the discharge or dismissal or to the original characterization of the member's discharge or dismissal." 10 U.S.C. § 1553(d)(3)(A)(ii).

6.   On August 25, 2017, the Under Secretary of Defense for Personnel and Readiness issued clarifying and supplemental guidance that applied to both Military Discharge Review Boards and Boards for Correction of Military/Naval Records. *See* Ex. C to Mot. for Class Cert., ECF No. 51-5, Memorandum from Anthony Kurta, Under Secretary of Defense for Personnel and

Readiness (hereinafter "Kurta Memo") (Aug. 25, 2017). The Kurta Memo stated that the "supplemental guidance provided by then-Secretary Hagel on September 3, 2014, as clarified in this guidance, also applies to both BCM/NRs and DRBs." *Id.*

7.   When the ADRB makes a factual determination after considering contrasting evidence in the record, "the decisional document shall set forth the conflicting evidence and explain why the information relied upon was more persuasive than the information that was rejected." 32 C.F.R. § 70.8(e) (2018); see also DoD Instruction 1332.28, Discharge Review Board Procedures and Standards (April 4, 2004).

8.   The Army, as a federal agency, is responsible for maintaining records for a variety of official purposes. *See* 5 U.S.C. § 552a(e)(5); 44 U.S.C. §§ 3101, 3301 (2018).

**A.   With Regard to Plaintiff Stephen M. Kennedy**

1.   On July 27, 2009, Mr. Kennedy was discharged from the Army with a service characterization of General after going absent without leave as a result of his struggles with PTSD following his deployment to Iraq.

2.   Mr. Kennedy applied *pro se* to the ADRB for a discharge upgrade in November 2010, and again in February 2015. The ADRB denied his application both times.

3.   Mr. Kennedy filed the present action to dispute the ADRB's denial of his discharge upgrade application on December 8, 2016, ECF No. 1, and filed an amended complaint on April 17, 2017, that joined Plaintiff Alicia Carson and added class claims, ECF No. 11.

4.   After this Court remanded Mr. Kennedy's application to the ADRB in September 2017, ECF No. 29, the ADRB upgraded Mr. Kennedy's discharge status to Honorable on March 29, 2018, but failed to fully correct his stigmatizing narrative reason for separation, ECF No. 47.

**B.  With Regard to Plaintiff Alicia J. Carson**

1.  Ms. Carson was discharged from the Army with a service characterization of General on May 29, 2012, after missing drill practices due to her diagnosed PTSD and traumatic brain injury (TBI).

2.  Ms. Carson applied for a discharge upgrade from the ADRB in April 2015 and was denied. Ms. Carson joined the present action on April 17, 2017, ECF No. 11.

3.  After this Court remanded Ms. Carson's application to the ADRB in September 2017, ECF No. 29, Ms. Carson's discharge status was upgraded to Honorable on October 18, 2017, ECF No. 30-01.

**V.     Case-Management Plan**

**A.  Initial Disclosures**

Plaintiffs propose that initial disclosures will be served within fourteen days of a scheduling order pursuant to Fed. R. Civ. P. 16(b).

**B.  Scheduling Conference with the Court**

Magistrate Judge Spector, to whom this case has been referred (*see* ECF No. 101 at 4), has set a telephonic status conference for October 7, 2019, at 3:00 PM.  *See* ECF No. 103.

**C.  Early Settlement Conference**

1.  Plaintiffs certify that they have considered the potential benefits of attempting to settle the case before undertaking significant discovery or motion practice. Settlement is unlikely at this time.

2.  Plaintiffs do not request an early settlement conference at this time.

3.  Plaintiffs prefer a settlement conference, if such a conference is held, to be held with a magistrate judge. If Plaintiffs wish to proceed with a formal settlement conference in the future, they will update their preferences with the Court.

4.   Plaintiffs do not request a referral for alternative dispute resolution pursuant to D. Conn. L. Civ. R. 16.

**D.  Joinder of Parties and Amendment of Pleadings**

Plaintiffs' position is that the pleadings are currently sufficient. Plaintiffs reserve the right to amend the pleadings subject to Fed. R. Civ. P. 15(a)(2) should discovery reveal the bases for any additional claims.

**E.  Discovery**

Recognizing that the precise contours of this case may not be clear at this point, in making the proposals below concerning discovery, Plaintiffs have considered the scope of discovery permitted under Fed. R. Civ. P. 26(b)(1). At this time, Plaintiffs wish to apprise the Court of the following information regarding the "needs of the case":

The Plaintiffs' proposed scope of discovery is set forth below.

1.   First, to preserve the medically sensitive information and privacy of the class members, Plaintiffs will request a protective order for discovery regarding the named Plaintiffs and class members. *See* Ex. A.

2.   Second, Plaintiffs anticipate that discovery will be needed on all matters related to the causes of action and defenses raised in both their and the Secretary's pleadings, including but not limited to:

a.   The Secretary's policies, procedures, and practices related to discharge-upgrade applications involving PTSD, MST, and related conditions;

b.   Evidentiary standards applied by the Secretary in considering veterans' discharge-upgrade applications involving PTSD, MST, and related conditions;

c.   Training of ADRB personnel and Board members related to discharge-upgrade applications involving PTSD, MST, and related conditions;

9

d. Material relating to the ADRB's internal quality control review procedures of individual applications, including but not limited to evidentiary standards applied in individual cases, and internal debate or discussion regarding individual applicants;

e. Information about the implementation of the Hagel Memo, Kurta Memo, and any other internal guidance or instructions related to discharge-upgrade applications involving PTSD, MST, and related conditions;

f. Information about potential members of the class that is possessed by the government, including all class members' redacted applications for discharge upgrades and their corresponding decisional documents issued by the ADRB;

g. Evidence regarding the prevalence of PTSD, TBI, and related mental-health conditions among veterans of the Army;

h. Department of Defense and Army personnel involved in designing and executing ADRB policy, practice, and review;

i. Each allegation in the Amended Complaint and any subsequent Amended Complaint that is not admitted by the Secretary; and

j. Any defense raised by the Secretary.

3. Last, Plaintiffs propose the following discovery schedule:

a. All discovery, including depositions of expert witnesses pursuant to Fed. R. Civ. P. 26(b)(4), will commence immediately and be completed by October 1, 2020.

b. Discovery will be conducted in phases.  Fact discovery will be completed on or before June 1, 2020. Expert discovery will be completed on or before October 1, 2020.

    c.   The parties may request permission to serve more than 25 interrogatories.

    d.   The parties may request permission to conduct more than 10 depositions of fact witnesses. The depositions will be completed by June 1, 2020.

    e.   Plaintiffs intend to call expert witnesses at trial.

    f.   Plaintiffs will designate all trial experts and provide opposing counsel with reports from retained experts pursuant to Fed. R. Civ. P. 26(a)(2) by July 1, 2020. Depositions of any such experts will be completed by October 1, 2020.

    g.   The Defendant will designate all trial experts and provide opposing counsel with reports from retained experts pursuant to Fed. R. Civ. P. 26(a)(2) by August 1, 2020. Depositions of any such experts will be completed by October 1, 2020.

4.   Plaintiffs seek no damages in this action and thus no damages analysis is necessary.

5.   Undersigned counsel (after consultation with their clients concerning computer-based and other electronic information management systems, including historical, archival, back-up and legacy files, in order to understand how information is stored and how it may be retrieved) have sent to Defendant a proposed Document Production Protocol, attached here as Exhibit B, regarding the disclosure and preservation of electronically stored information ("ESI"), including, but not limited to, the form in which such data shall be produced, search terms to be applied in connection with the retrieval and production of such information, the location and format of electronically stored information, appropriate steps to preserve electronically stored information, and the allocation of costs of assembling and producing such information. Plaintiffs propose that the Protocol govern the procedures for preservation, disclosure, and management of ESI. *See* Ex. B. Plaintiffs intend to work collaboratively with Defendant on ESI issues.

6.   Undersigned counsel (after consultation with their clients) have discussed the locations, volume, organization, and costs of retrieval of information stored in paper or other non-electronic forms. Plaintiffs propose that the Document Production Protocol, attached here as Exhibit B, govern the procedures for the preservation, disclosure, and management of such information. Plaintiffs intend to work collaboratively with Defendants on non-electronic discovery.

7.   Undersigned counsel have considered discovery procedures that minimize the risk of waiver of privilege or work-product protection, including procedures for asserting privilege claims after production. Plaintiffs propose the following procedures for asserting claims of privilege or protection after inadvertent production:

     a.   As soon as practicable after a claim of attorney-client privilege or protection as attorney work product arises or is identified after inadvertent production of any information or documents, the party claiming such privilege shall notify the opposing party in writing, including identification of the claimed documents by Bates Stamp number, if any; the basis for such claim of privilege or protection; and all other information required for a privilege log under the applicable Rules, without waiving such privilege or protection. Within seven days of receiving notice of such a claim of privilege, the receiving party will notify the producing party if it agrees with the claim of privilege. If the parties are in agreement with respect to the claim of privilege or protection, the receiving party shall immediately return all copies (electronic and paper) of the information or documents to the producing party or otherwise agree and certify as to their destruction, and the receiving party shall not use such information or documents for any purpose. If the receiving party disclosed the information or documents

12

before being notified, it must take reasonable steps to retrieve such material. If the parties are not in agreement with respect to the claim of privilege or protection as attorney work product, the claimed documents shall be segregated from all other materials, and within 30 days of the communicated claim of privilege or protection, the party asserting the existence of such privilege or protection shall file a motion for a protective order with the Court.

8. All motions related to fact discovery shall be filed no later than fifteen days after the close of fact discovery. All other discovery-related motions shall be filed no later than fifteen days after the close of discovery.

### F.  Dispositive Motions

Dispositive motions shall be filed no later than 45 days after the close of discovery. Parties shall file any cross-motions or responses within 30 days of a motion of the opposing party.  Replies shall be filed within 21 days of any responses.

## VI.    Joint Trial Memorandum

The joint trial memorandum required by the *Standing Order on Trial Memoranda in Civil Cases* will be filed within 60 days of the resolution of dispositive motions.

## VII.   Trial Readiness

The case will be ready for trial within 30 days of the filing of the joint trial memorandum.

As officers of the Court, undersigned counsel agree to cooperate with Defendant's counsel and the Court to promote the just, speedy, and inexpensive determination of this action.

Dated:        September 27, 2019
              New Haven, Connecticut

Respectfully Submitted,

By: /s/ Michael J. Wishnie

Susan J. Kohlmann, *pro hac vice*      Julia Coppelman, Law Student Intern[*]
Jeremy M. Creelan, *pro hac vice*      Samuel J. Davis, Law Student Intern
William S.C. Goldstein, *pro hac vice*   Andrew C. DeGuglielmo, Law Student Intern
Ravi Ramanathan, *pro hac vice*      Samuel E. Frizell, Law Student Intern
Jacob L. Tracer, *pro hac vice*       Michael J. Wishnie, ct27221
Jenner & Block LLP             Renée A. Burbank, ct30669
919 Third Avenue               Veterans Legal Services Clinic
New York, NY 10022-3908      Jerome N. Frank Legal Services Organization
Tel: (212) 891-1678           Yale Law School
JCreelan@jenner.com         P.O. Box 209090
                        New Haven, CT 06520-9090
                        Tel: (203) 432-4800
                        michael.wishnie@ylsclinics.org

*Counsel for Plaintiffs*

---

[*] Motion for law student appearance forthcoming.