UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| STEPHEN M. KENNEDY and ALICIA J. CARSON, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>JOHN E. WHITLEY, Acting Secretary of the Army,<br><br>Defendant. | 3:16 - CV - 2010 (CSH)<br><br><br><br>APRIL 26, 2021 |

**RULING AND ORDER APPROVING CLASS ACTION SETTLEMENT**

**HAIGHT, Senior District Judge:**

This is a nation-wide-certified class action on behalf of certain U.S. Army veterans against the Defendant Secretary of the Army. The parties move jointly [Doc. 218] for the Court to approve a proposed settlement [Doc. 198-2]. The motion falls under Federal Rule of Civil Procedure 23(e), which provides that the claims of a certified class "may be settled, voluntarily dismissed, or compromised only with the court's approval."

In a prior Ruling and Supplemental Order [Doc. 204], together with the Order Granting Preliminary Approval, 2020 WL 7706604, the Court gave preliminary approval to the proposed settlement, directed the manner of notifying class members about the settlement, and scheduled a fairness hearing concerning it. *See Kennedy v. McCarthy*, No. 3:16-CV-2010 (CSH), 2020 WL

7706604, at *2 (D. Conn. Dec. 28, 2020). Enhanced notice to class members was given. The fairness hearing was held. The parties now move jointly for final Court approval of the proposed settlement.

For the reasons that follow, the Court grants final approval of the comprehensive settlement proposed by the parties.

## I. Background and Procedural History

Familiarity is assumed with the Court's Preliminary Ruling, Doc. 204, and Supplemental Order, 2020 WL 7706604, filed simultaneously, which granted preliminary approval of the proposed settlement and issued directions for notification of class members. This Ruling reiterates certain aspects of the case's background and procedural history.

Stephen M. Kennedy and Alicia J. Carson, the named Plaintiffs, are Army veterans who were deployed in combat action: Kennedy in Iraq in 2007 and 2008, and Carson in Afghanistan in 2010. They allege that they both developed mental health conditions during that service, and then received less-than-Honorable discharges because of incidents related to those conditions. After the Army Discharge Review Board ("ADRB") denied their discharge upgrade applications, Kennedy and Carson filed this purported class action against the Defendant Secretary of the Army (hereinafter "the Army"), alleging that since 2001 the ADRB's arbitrary rejection of such applications submitted by veterans who experienced service-related post-traumatic stress disorder ("PTSD"), traumatic brain injury ("TBI"), military sexual trauma ("MST"), or other mental health conditions violated the Administrative Procedure Act, 5 U.S.C. §§ 701 *et seq.,* and the Due Process Clause of the Fifth Amendment.

The case was originally assigned to the late District Judge Warren Eginton. Judge Eginton denied the Army's motion to dismiss Plaintiffs' complaint, 2019 WL 7290933, and granted their motion

for class certification.[1] Judge Eginton's order certified a class of:

> All Army, Army Reserve, and Army National Guard veterans of the Iraq and Afghanistan era—the period between October 7, 2001 to present—who:
>
> (a) were discharged with a less-than Honorable service characterization (this includes General and Other than Honorable discharges from the Army, Army Reserve, and Army National Guard, but not Bad Conduct or Dishonorable discharges);
>
> (b) have not received discharge upgrades to Honorable; and
>
> (c) have diagnoses of PTSD or PTSD-related conditions or record documenting one or more symptoms of PTSD or PTSD-related conditions at the time of discharge attributable to their military service under the Hagel Memo standards of liberal and special consideration.

*Kennedy v. Esper*, No. 16CV2010 (WWE), 2018 WL 6727353, at *7 (D. Conn. Dec. 21, 2018).

"Hagel Memo" is a reference to former Secretary of Defense Charles Hagel, who in 2014 issued a memorandum to all military review boards (including the ADRB) directing that military review boards give "liberal consideration" to discharge review applications that indicate that mental health conditions or experiences of MST may have been "potential mitigating factors" for the misconduct that resulted in a less-than-Honorable discharge. *See* Hagel Memo [Doc. 11-1], at 4-5. That policy was restated and reinforced by subsequent Department memoranda and codified by Congress in 10 U.S.C. § 1553 (captioned "Review of discharge or dismissal"). Plaintiffs regard as particularly significant a memorandum issued on August 25, 2017, by A.M. Kurta, then-Acting Under Secretary of Defense for Personnel and Readiness, which stated: "Liberal consideration will be given to veterans petitioning for discharge relief when the application for relief is based in whole or in part on matters relating to mental

---

[1] For the full citation for Judge Eginton's ruling on the motion to dismiss, *see Stephen Kennedy v. Esper*, No. 16CV2010 (WWE), 2019 WL 7290933 (D. Conn. Jan. 9, 2019).

health conditions," and specifies certain circumstances to be considered in implementing that principle ("the Kurta Factors"). *See* https://dod.defense.gov/Portals/1/Documents/pubs/Clarifying-Guidance-to-Military-Discharge-Review-Boards.pdf (at 2, ¶ 3).

The class complaint's core contention is that "the ADRB failed to carry out its statutory duties and arbitrarily denied the discharge upgrade applications of countless veterans," in particular by failing to recognize "advances in medical science" in understanding PTSD, TBI and "other mental health conditions," and by disregarding the direction of the Hagel Memorandum and subsequent administrative and statutory directives that "liberal consideration" be given to veterans' military service-related health conditions or experiences in the context of "misconduct that resulted in a less-than-Honorable discharge." Plaintiff's Brief in Support of Preliminary Approval [Doc. 198-1], at 6.

In his class certification order, Judge Eginton appointed the Yale Law School's Veterans Legal Services Clinic and the law firm of Jenner & Block LLP as Class Counsel. 2018 WL 6727353, at *7. The Yale Law School Clinic is directed by Michael J. Wishnie, a practicing attorney and Clinical Professor at the School. Mr. Wishnie and student interns at Yale Law School have represented Plaintiffs and the Class throughout the action, together with Jenner & Block, a global law firm, whose partners and associates from the New York City office have been active in the case. The Army is represented by the Office of the United States Attorney for this District, accompanied by a team of attorneys from the Army.

The parties began pre-trial discovery. Disputes arose. Judge Eginton referred supervision of discovery to Magistrate Judge Robert M. Spector. The parties, through counsel, expressed an interest in exploring settlement. Judge Spector arranged for, conducted, and assisted the attorneys during extensive negotiation sessions which ultimately produced the joint settlement proposal the Court has

approved preliminarily. The question is whether the Court should now grant final approval to that proposed settlement.

## II. Standards of Review on Approval of Settlement

In *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96 (2d Cir. 2005), the Second Circuit stated generally that "[a] court may approve a class action settlement if it is fair, adequate, and reasonable, and not a product of collusion. . . . A presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." 396 F.3d at 116 (citations and internal quotation marks omitted). The Second Circuit described itself in *Wal-Mart* as "mindful of the strong judicial policy in favor of settlements, particularly in the class action context," where "[t]he compromise of complex litigation is encouraged by the courts and favored by public policy." *Id*. (citations and internal quotation marks omitted).

Class actions in federal district courts are governed by Rule 23 of the Federal Rules of Civil Procedure. Rule 23 was amended on December 1, 2018, "mainly to address issues related to settlement." Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment. Prior to the 2018 amendments, Rule 23 required in general terms that a district court find a proposed settlement to be "fair, reasonable and adequate," but was it silent on the factors the court should assess in making that evaluation. District courts, lacking such guidance in the Rule, looked to circuit court cases.

In the Second Circuit, the leading and oft-cited decision is *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974).[2] *Wal-Mart* sets out what the Second Circuit refers to as "the

---

[2] *Overruled on other grounds by Missouri v. Jenkins*, 491 U.S. 274, 109 S.Ct. 2463, 105 L.Ed.2d 229 (1989).

*Grinnell* factors" in examining the fairness, reasonableness, and adequacy of a class settlement:

>   (1) the complexity, expense and likely duration of the litigation;
>
>   (2) the reaction of the class to the settlement;
>
>   (3) the stage of the proceedings and the amount of discovery completed;
>
>   (4) the risks of establishing liability;
>
>   (5) the risks of establishing damages;
>
>   (6) the risks of maintaining the class action through the trial;
>
>   (7) the ability of the defendants to withstand a greater judgment;
>
>   (8) the range of reasonableness of the settlement fund in light of the best possible recovery;
>
>   (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Wal-Mart*, 396 F.3d at 117 (citing *Grinnell*, 495 F.2d at 463).

The 2018 amendments to Rule 23(e) give district courts specific instructions about the factors to consider in deciding whether to approve the proposed settlement of a class action. The Advisory Committee's Notes to the amendments observe that "Courts have generated lists of factors to shed light on this concern," and add that "each circuit has developed its own vocabulary for expressing those concerns," *Grinnell* and its progeny being the Second Circuit's contribution to the exercise. Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment. "The goal of this amendment," the Advisory Committee continues, "is not to displace any factor, but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." *Id.*

As for *procedural* analysis factors, the 2018 amendments to Rule 23(e)(2) require the court

to consider whether "the class representatives and class counsel have adequately represented the class," Fed. R. Civ. P. 23(e)(2)(A), and whether "the proposal was negotiated at arm's length," *id.* 23(e)(2)(B). The Advisory Committee's Notes say of them: "These paragraphs identify matters that might be described as 'procedural concerns,' looking to the conduct of the litigation and of the negotiations leading up to the proposed settlement." Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment. As for *substantive* analysis factors, the amendments require the court to consider whether "the relief provided for the class is adequate," Fed. R. Civ. P. 23(e)(2)(c), taking into account certain specified considerations which mostly overlap those articulated in *Grinnell*, and whether "the proposal treats class members equitably relative to each other," *id.* 23(e)(2)(D). The Notes say: "These paragraphs focus on what might be called a 'substantive' review of the terms of the proposed settlement. The relief that the settlement is expected to provide to class members is a central concern." Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment.

Given this history, and the guidance furnished by the Advisory Committee's Notes, in the case at bar I will consider both sets of factors – those articulated by the Second Circuit in *Grinnell* and subsequently by the 2018 amendments to Rule 23(e) – in analyzing whether the proposed settlement is fair, reasonable, and adequate, and should accordingly be granted final approval by the Court.

That consideration is preceded by a description of the proposed settlement, in greater detail than that appearing in the "Preliminary Ruling on Proposed Settlement and Class Notice." Doc. 204, at 6-7.

### III. The Proposed Settlement

The certified Plaintiff class is composed of Army veterans "of the Iraq and Afghanistan era – the period between October 7, 2001 to present" who developed mental health conditions during their military service, and thereafter received less-than-Honorable discharges because (it is alleged) of

7

troublesome incidents related to those conditions (the "Plaintiff Class"). *See* 2018 WL 6727353, at *7.

The Plaintiff Class and the Defendant Secretary of the Army, acting through counsel, have signed and asked the Court to approve a "Stipulation and Agreement of Settlement" [Doc. 198-2] (hereinafter sometimes "S.A." or "Settlement Agreement"). The Settlement Agreement provides benefits for (1) individuals whose previous applications to the ADRB for discharge upgrades from less-than-Honorable were denied; and (2) individuals who received a less-than-Honorable discharge but have not yet applied for an upgrade. For those veterans whose previous applications to the ADRB for a discharge upgrade were denied, the relief granted by the Settlement Agreement is *retrospective* in nature. For those veterans who have not previously applied for an upgrade but may do so in future, the relief is *prospective*.

The Settlement Agreement divides those veterans whose applications for discharge upgrades were denied into two groups: "Group A," veterans who received adverse ADRB decisions during the period from April 17, 2011 (six years before the complaint in the action was filed) to the effective date of the settlement, Doc. 198-2 (S.A.), at 10; and "Group B," veterans who received adverse decisions between October 7, 2001 and April 16, 2011, *id.* at 11. The distinction reflects the six-year statute of limitations for filing claims under the Administrative Procedure Act.

The Settlement Agreement provides that for adverse decisions issued on or after April 17, 2011 (the Group A cases), the ADRB will *automatically* review the discharge applications, to ensure that their denial properly applied the legal standard of lenity articulated by administrative and statutory declarations. Veterans within this category need not do anything. The settlement obligates the Army to "conduct an electronic search of ADRB data" to identify individuals whose applications were denied during that time frame, and whose case data raises mental health issues. S.A., at § IV.A.2. The Army

is directed by the settlement to send a notice to each veteran in Group A, stating that the ADRB will reconsider the individual applicant's case without a further response by the applicant, advising that the applicant may submit supplemental and medical evidence in support of the application, and including information regarding available legal and medical services. *Id*. at § IV.A.3. The settlement further provides: "The ADRB will make every effort to complete its reconsideration of Group A Applicants in a timely manner, and agrees to provide a report every six months of the number of Group A cases reconsidered and decided." *Id*. at § IV.A.5.

As for Group B, the Settlement Agreement obligates the ADRB to conduct an electronic search of its data in order to identify individuals whose applications were denied between October 7, 2001, and April 16, 2011, and whose case data raises mental health condition issues. *Id.* at § IV.B.2. Notices on Army letterhead will be sent to all such Group B individuals, advising them of the settlement in this litigation, expressing the Army's willingness to accept a re-application for a discharge upgrade, and listing possible sources of professional assistance toward that end. *Id.* at § IV.B.3.

Section IV.G. of the Settlement Agreement applies to "all discharge upgrade applications submitted to the ADRB after the Effective Date of Settlement." *Id.* at § IV.G.1. Section IV.G.1. directs the ADRB, when writing to acknowledge receipt of the application, to inform the applicant "of how to find legal counsel and Veterans Services Organizations to assist with their application." *Id.* Section IV.G.2. requires that the Army's notice also advise applicants that "it is to [the] applicant's benefit to provide medical evidence for the review process," and inform applicants of available mental health and evaluation services at Veterans Affairs facilities. *Id.* at § IV.G.2.

Lastly, the Settlement Agreement provides that the Army must revise its written Military Review Boards Standard Operating Procedures so as to include the Kurta Factors, *id.* at § IV.D.; the

Army will implement a Telephonic Personal Appearance Board Program, the purpose of which is to allow applicants requesting a personal appearance "to participate in telephonic hearings from their personal residences, or other locations of their own choice," *id.* at § IV.E.1.; and the Army "agrees to conduct annual training for ADRB members and staff tailored to Special Cases,"[3] training which "will include changes made as a result of this Settlement Agreement, including training on the revised Military Review Boards Standard Operating Procedures," *id.* at § IV.F.1-2.

### IV. Notice of Settlement Given to Class Members

Rule 23(e)(1)(B) provides that with respect to proposed settlements of class actions, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal . . . ." Fed. R. Civ. P. 23(e)(1)(B).

Assuming without deciding that the class members in the case at bar fall within that category, it is well established (as the wording of the Rule itself indicates) that "[t]he standard for the adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal Rules is measured by reasonableness," which requires that "the settlement notice must fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Wal-Mart,* 396 F.3d at 113-14 (citations and internal quotation marks omitted). In *Handschu v. Special Services Division*, 787 F.2d 828 (2d Cir. 1986), the Second Circuit, holding that the notice given of a proposed class action settlement was adequate, said:

---

[3] "Special Cases" is defined in the Settlement Agreement, Section II.DD., as "any application for a discharge upgrade or change in narrative reason for separation that includes a diagnosis or allegation of, or evidence or allegations of symptoms of, PTSD, TBI, MST, or OBH." Doc. 198-2 (S.A.), at § II.DD.

> Notice must be reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections, and must express no opinion on the merits of the settlement. Subject to these requirements, however, the district court has virtually complete discretion as to the manner of giving notice to class members.

787 F.2d at 832–33 (citations and internal quotation marks omitted).

At the hearing on the Plaintiff Class's motion for preliminary approval of the proposed settlement, the Court approved the form of the notice to be sent to class members, which summarized the terms of the settlement and gave further information about procedures leading toward its possible approval. However, the Court was not satisfied with the scope of distribution of the notice suggested by counsel, which was limited to postings on the parties' web sites. Class Counsel also referred in their submissions to an additional "extensive outreach strategy" they had been conducting, in an effort to inform affected veterans about the litigation. The Court's Supplemental Order granting preliminary approval of the settlement, Doc. 204, at 10, directed Class Counsel to continue with those efforts, and further directed Class Counsel to file, at least 14 days before the fairness hearing, "an affidavit stating and describing in detail the communications between Class Counsel and recipients of the outreach efforts," *id.* at § VI. ("Supplemental Order"), ¶ 3.

That latter direction, when combined with the parties' web sites, produced impressive results. Mr. Wishnie, as one of Class Counsel, filed an affidavit stating that he "oversaw the implementation of the plan ordered by the Court to notify Class Members of a proposed settlement in this action." Doc. 216-1, at ¶ 1. Plaintiffs also filed a declaration by Jennifer M. Keough, Chief Executive Officer of JND Legal Administration, a "legal administration services provider" retained by Class Counsel to act in this case as the "Settlement Administrator" to carry out the terms of the Settlement Agreement and the

11

Court's relevant orders. Doc. 216-2, at ¶¶ 1, 7. The Wishnie affidavit and the Keough declaration were filed on March 10, 2021.

These submissions recite that during the period after approval of the notice, two web sites hosted by Class Counsel to furnish information about the settlement had received 2,687 visitors from all 50 states. Doc. 216-1, at ¶ 27. JND Legal Administration responded to 106 email inquiries and 64 phone calls about the settlement. Doc. 216-2, at ¶ 17. In addition, Class Counsel contacted 36 veterans service organizations, seven of whom affirmatively responded that they had distributed the class notice to their members. Doc. 216-1, at ¶¶ 4, 7. Class Counsel also posted several tweets on their Twitter account to notify class members about the proposed settlement, and received 53,077 responsive "impressions." *Id.* at ¶¶ 19-22. In November 2020, before the Court preliminarily approved the settlement, Class Counsel held a press conference and issued a press release which over 160 reporters received, resulting in over 60 publications reporting on the proposed settlement (including *The New York Times*, *The Washington Post*, *The Wall Street Journal*, and the Associated Press wire service). *Id.* at ¶¶ 14-15. In January 2021, after the Court preliminarily approved the settlement and approved the class notice, Class Counsel again sent a joint press release with the Army to over 160 reporters. *Id.* at ¶ 17. Eight publications, including *Stars & Stripes* and *The American Legion* (with traditional military community followings) reported on the preliminary approval of the settlement. *Id.* at ¶ 18. Class Counsel continued to post tweets on Twitter, reminding readers of the settlement, and continued to receive responsive impressions numbering in the thousands. *Id.* at ¶¶ 22-23. Class Counsel also persuaded Representative Jackie Speier and Senator Richard Blumenthal to send "Dear Colleague" letters to members of Congress, asking them to advise their constituents of the litigation, the proposed settlement, and its potential benefits to veterans. *Id.* at ¶ 25.

I am satisfied that these energetic and imaginative efforts by Class Counsel, which I have only summarized here, are reasonable in the circumstances, and give the required adequate notice to class members about the proposed settlement and the subsequent proceedings with respect to its approval by the Court. The challenge in the case was to give reasonably adequate notice to a nation-wide class of thousands of Army veterans, whose applications for discharge upgrades had been denied. In *Handschu*, where the class consisted of individuals in New York City surveilled by the NYPD, publication of the notice in City newspapers was practical and sufficient. The case at bar is entirely different, and Class Counsel (prompted by and obedient to the Court's earlier order) have done the best they reasonably can to give the requisite notice.

### V. Representation of the Class and Negotiation of the Settlement

The procedural factors identified by amended Federal Rule of Civil Procedure 23(e)(2)(A) and (B) are satisfied and do not require extended discussion.

It is manifest that, as Rule 23(e)(2)(A) requires, "the class representatives and class counsel have adequately represented the class." The class representatives, Kennedy and Carson, are veterans whose circumstances are typical of the claims asserted in the litigation. They have been attentive to the case as it has proceeded, including the hearings in Court.

Class Counsel are the Yale Law School Veterans Legal Services Clinic, directed by Michael Wishnie, a practitioner and member of the law school faculty, and the firm of Jenner & Block, whose partners are handling the case from that global firm's New York City office. The practicing attorneys involved are experienced in civil rights cases. Those attorneys, as well as interns who are students at Yale Law School, have rendered effective service to the class of veterans throughout the course of the litigation. Class Counsel persuaded Judge Egington to certify the class and deny the Army's motion

13

to dismiss the action. Class Counsel conducted extended discovery, and then participated in lengthy settlement conferences presided over by Magistrate Judge Spector, resulting in the joint settlement proposal now before the Court. Rule 23(e)(2)(A) directs me to consider whether "class counsel have adequately represented the class." I conclude, without difficulty, that they have done so.

Rule 23(e)(2)(B) directs me to consider whether "the proposal was negotiated at arm's length." Clearly it was, although the proposition as phrased understates reality. The record shows that the possibility of settlement entered the minds of counsel for both parties during the course of complicated discovery. According to the Settlement Agreement, on February 19, 2020, the parties "participated in a settlement conference before Judge Spector." Doc. 198-2 (S.A.), at §§ I.R. and I.S. Over the subsequent months, the Parties engaged in protracted and extensive settlement negotiations supervised by Judge Spector. On October 7, 2020, after extensive arm's-length negotiations and exchange of multiple proposals, Plaintiffs and Defendants reached an agreement in principle to settle the litigation." *Id.* (internal Doc./ECF citations omitted). This proposal was not only "negotiated at arm's length" between the parties and their attorneys, the lengthy and ultimately successful negotiations took place under the steady gaze and active direction of Judge Spector.

The procedural factors the Court must consider militate in favor of final approval of the proposed settlement.

### VI. Final Approval of the Settlement

Everything said thus far in this Ruling is, in a sense, Prologue. I come now to the substantive factors the Court must consider in deciding if final approval should be granted to the proposed settlement.

Rule 23(e)(2)(C) conditions approval on a court finding that "the relief provided for the class

is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal . . . " Fed. R. Civ. P. 23(e)(2)(C)(i). When one considers the adequacy of the relief the settlement provides to the Plaintiff Class of Army veterans, there is an immediate awareness of the fundamental nature and striking extent of that relief.

The members of the class are Army veterans who served in Iraq or Afghanistan, have mental health conditions related to their military service, received less-than-Honorable discharges, and whose applications for discharge upgrades were denied by the Army (or who have not yet applied). There are thousands of such veterans. They correctly believe they served their Nation honorably, at a time of her need: a belief that sustains the human spirit. But the Army has refused to grant these veterans Honorable discharges. While that refusal has adverse economic, medical and social consequences for the rejected veterans in day-to-day life, it also causes or exacerbates senses of unworthiness, deprivation, loss or unfairness that afflict the human spirit. This case presents a situation of widespread and enormous personal suffering.

It is in these compelling circumstances that able and experienced attorneys for the Plaintiff Class and the Army came together, with manifest mutual good will, and under the direction of a gifted Magistrate Judge, and now jointly present to the Court proposed settlement of this class action. What this class action did was create a vehicle for the Plaintiff veterans to claim that the Army Discharge Review Board's near-uniform denial of their applications for discharge upgrades violates recent administrative and statutory declarations that, where conditions of mental health are presented, such applications should be considered leniently. What the proposed settlement does is obligate the Army to reconsider denials of, or allow re-application for, discharge upgrades on behalf of class members.

That is a fundamental reform in veterans' favor. The Settlement Agreement does not dictate a decision in any particular veteran's favor. But if the ADRB, reconsidering a prior denial of an application discharge upgrade or a re-application for one, concludes on the basis of the recent declarations the Agreement cites that the upgrade should be granted, the veteran in question has achieved a complete remedy. If the ADRB denies an upgrade or denies an initial application for one, the provisions of the Settlement Agreement, which will have the effect of a court order, may support a judicial review of the ADRB's adverse decision.

Moreover, the settlement agreement obligates the Army review boards to study, learn, mark and inwardly digest the recent declarations about leniency in giving Honorable discharges to afflicted veterans, which will benefit class members who received less-than-Honorable discharges but have not yet applied for upgrades.

These are distinctly favorable sources of relief for class members, given "the costs, risks, and delay of trial and appeal," factors I am commanded by Rule 23(e)(2)(C)(i) to consider. The Settlement Agreement recites at Section I.U. that the Army "has denied and continues to deny each and all of the claims and contentions alleged by the Plaintiffs," and "has expressly denied and continues to deny all charges of wrongdoing or liability against it arising out of any of the conduct, statements, acts or omissions alleged, or that could have been alleged, in this Litigation," a protestation AUSA Elicker reiterated at the fairness hearing on March 24, 2021:

> [T]he Army does continue to deny the allegations of the complaint; and we just wish to underscore that there has been no judicial finding that the Army engaged in, you know, in the – or engaged in conduct that's alleged in the complaint. So the Army continues to deny each and every one of the claims and contentions alleged by the plaintiff but nonetheless moves now for the Court's approval of the settlement of the case.

16

Transcript of "Fairness Hearing," Mar. 24, 2021 ("Tr.") at 14: 10-17.

It follows that at a trial the Army could press the contentions that it did not violate governing law in denying a discharge upgrade to any particular veteran, and alternatively, that such violations as may be proved did not occur in sufficient number to establish an illicit practice or policy on the part of the Army. Preparation for trial of these issues, on which the Plaintiff Class bears the burden of proof, would require considerable additional discovery. The trial itself would be time consuming, with litigation's inherent uncertainties posing manifest risk of an adverse judgment to both parties.

The Settlement Agreement contains appraisals of the situation by the parties which I will quote because they are realistic and pragmatic. Plaintiffs and Class Counsel say they agreed to the proposed settlement –

> after considering, among other things: (1) the substantial benefits available to the Class under the terms herein; (2) the attendant risks and uncertainty of litigation, especially in complex actions such as this, as well as the difficulties and delays inherent in such litigation; and (3) the desirability of consummating this Settlement agreement to provide effective relief to the Class.

Doc. 198-2 (S.A.), at § I.T. The Defendant Army says it has concluded –

> that further defense of the Litigation would be protracted and expensive, and that it is desirable that the Litigation be fully and finally settled in the manner and upon the terms and conditions set forth in the Settlement Agreement. Defendant also has taken into account the uncertainty and risks inherent in any litigation.

*Id.* at § I.V. These conclusions, arrived at by competent and experienced attorneys for both parties, are reasonable and professionally persuasive. The Court considers them in its determination of whether the settlement should be approved.

The Court grants that final approval. As I noted in the opinion granting preliminary approval,

the settlement "achieves the principal purpose of the class action, which is to reform the process by which the ADRB considers discharge upgrade applications." Doc. 204, at 6. That reform inures to those veterans, discharged less than honorably, whose applications for discharge upgrades have been denied, as well as to those veterans who have not yet applied for upgrades. The settlement confers substantial benefits upon all class members, in a manner which "treats class members equitably relative to each other," a factor identified in Federal Rule of Civil Procedure 23(e)(2)(D).

The proposed settlement merits the Court's approval because it satisfies the factors determinative of whether a settlement of a class action is fair, reasonable, and adequate. The class members achieve substantial benefits in an important and sensitive area of human endeavor. For class members, the settlement avoids the risk, delays and expense inherent in complex litigation.

It is not surprising that after effective and imaginative efforts by Class Counsel to give notice to the nation-wide class of Army veterans, no class member has objected to the terms of the settlement. On the contrary: Stephen Kennedy, one of the named Plaintiffs and a class representative, who received a discharge upgrade from the Army after the complaint was filed, stated at the fairness hearing:

> [W]hat was most important going forward to me was that everyone else got the same review that I did. And that's the opportunity that thousands of deserving veterans are going to receive in this settlement.
> . . .
> . . . [T]his change today will save lives. . . .
> . . .
> . . . I've only gotten positive feedback from people. I think, you know, being able to get another review, you know, knowing the proper procedures are going to be followed. . . .
> . . . So I do think it's been received well from people that I've spoken to.

Tr. at 19: 8-11; *id.* at 20: 4-5, 13-16, 23-24.

18

One *Grinnell* factor is "the reaction of the class to the settlement." *Grinnell*, 495 F.2d at 463. The Second Circuit said in *Wal-Mart* that "the absence of substantial opposition is indicative of class approval." 396 F.3d at 118. *Wal-Mart,* where a few class members objected to the settlement, applies *a fortiori* to the case at bar, where no objections to the settlement have been made, and Stephen Kennedy's statement furnishes significant evidence of widespread approval. In this case, the reaction of the class to the settlement weighs heavily in the settlement's favor, as do the other *Grinnell* factors.

The termination of this important litigation by a consensual joint settlement agreement furnishes an example of the class action concept working at its best: A resolution of difficult and sensitive legal issues, providing important benefits for thousands of afflicted Army veterans, is achieved based on extensive information, honest negotiation between able attorneys of good will, under the attentive and skillful direction of Magistrate Judge Spector. This class action achieves a just result for many veterans, and for the Army they served.

### VII. Conclusion

For the foregoing reasons, the Court makes this Order:

1. The Joint Application of the Plaintiffs and the Defendant [Doc. 218] for Final Approval by the Court of the Parties' Settlement Agreement [Doc. 198-2] is GRANTED.

2. The provisions of the Settlement Agreement are hereby incorporated into and designated as part of this ORDER OF THE COURT.

3. The Clerk of the Court is directed to discontinue the action and close the file, without costs, except as provided in the Settlement Agreement.

4. This Court retains jurisdiction over this discontinued action, in the event disputes arise over the implementation of the Settlement Agreement.

It is SO ORDERED.

Dated: New Haven, Connecticut
April 26, 2021

                                      */s/Charles S. Haight, Jr.*
                                      CHARLES S. HAIGHT, JR.
                                      Senior United States District Judge